## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

THE SATANIC TEMPLE, INC.

     Plaintiffs,

        v.

SAUCON VALLEY SCHOOL DISTRICT,

     Defendant.

Civil No.:

## VERIFIED COMPLAINT

### Introduction

1.     The Satanic Temple ("TST") sponsors the After School Satan Club ("ASSC" or "the Club") at a number of public schools across the country to provide young people with an alternative to other religious clubs that meet on campus after school. The Saucon Valley School District ("the District" or "SVSD") has intentionally opened up its facilities for after-school use by a variety of organizations, including the Good News Club, a Christian group sponsored by a local church and Child Evangelism Fellowship.

2.     In February, TST applied to hold monthly after-school gatherings at the Saucon Valley Middle School, where the Good News Club also meets. Although the District initially approved TST's application—correctly explaining in a Facebook post and email to parents that, "[b]y law, the District cannot discriminate among groups wishing to use the SVSD facilities"—it quickly bowed to the ensuing public outcry and rescinded its approval.

1

3.      The District claimed that the uproar, which included a threat of violence against the middle school later traced to a man in North Carolina, was caused by TST. Namely, the District accused TST of violating District policy by failing to clearly disassociate the Club from the District. Pointing to an ASSC permission slip distributed online, the District asserted that the document's explicit disclaimer, which stated that the ASSC "is not an activity of the school or the School District," was not large enough. According to the District, it was this purported failure of font size—and not the District's email to parents, its Facebook post, or the discriminatory beliefs of District officials or others who objected to the ASSC—that caused the disturbance and prompted the threat. Rather than simply asking TST to change the supposedly deficient disclaimer, however, the District banned the ASSC from using school facilities for the rest of the school year.

4.      This decision to rescind approval of TST's application and ban the ASSC from using school facilities was impermissibly based on TST's viewpoint and religion.

5.      Upon information and belief, the District had never before refused to allow an organization to use school facilities because the group failed to sufficiently disassociate itself from the District. Indeed, at the exact time that the District rescinded approval for ASSC meetings, a permission slip for the Good News Club posted on the sponsoring church's website had *no* language disclaiming District sponsorship of its meetings. Moreover, the District has sent students home with permission slips and flyers for organizations using school facilities, including the Good News Club, that—unlike the ASSC permission slip—had no disclaimer. And District officials have posted on SVSD social media accounts similar promotional materials, which had no disclaimer, for events and meetings held at District facilities by groups like Girls on the Run and the Scouts.

2

6.      The District's claim that it rescinded approval of TST's application because the ASSC's permission slip violated District policy is plainly a pretext to exclude a controversial group from District facilities.

7.      That the District's approval of the ASSC's use of school facilities caused controversy is of no moment: Under the First Amendment, the District can no more deny the ASSC access to its facilities than it could eject an after-school Muslim or Jewish club, or the Good News Club, from District schools due to SVSD officials' own bias or due to disruption caused by those who oppose the religion or viewpoint of the clubs. Under the First Amendment "protected speech or religious exercise [does not] readily give way to a 'heckler's veto.'"[1]

8.       Accordingly, TST seeks a declaratory judgment that the District's treatment of TST and the ASSC violates the Free Speech Clause, the Free Exercise Clause, and the Establishment Clause of the First Amendment to the United States Constitution as well as Article I Section 7 of the Pennsylvania Constitution; preliminary and permanent injunctive relief enjoining the District from continuing to deny TST and the ASSC access to District facilities; compensatory and nominal damages; and other relief as set forth below.

## JURISDICTION AND VENUE

9.      Plaintiff brings this matter under 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the U.S. Constitution. Plaintiff also brings this matter under Article I Section 7 of the Pennsylvania Constitution.

---

[1] *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022) (quoting *Good News Club v. Milford Central School*, 533 U.S. 98, 119 (2001)).

10.     This Court has jurisdiction over this civil rights action under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state constitutional claim pursuant to 28 U.S.C. § 1367(a).

11.     The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendant is subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that gave rise to this action occurred within the Eastern District of Pennsylvania.

## PARTIES

13.     Plaintiff, The Satanic Temple, Inc., is a non-theistic, religious not-for-profit corporation with its principal place of business in Salem, MA.

14.     TST has more than 700,000 individual members, who are located in every U.S. state, including in Pennsylvania and within the SVSD. TST also has recognized congregations in every state, including in eastern Pennsylvania.

15.     TST has been recognized by the IRS as a church, as defined in the Internal Revenue Code § 170(b)(1)(A)(i), and as a religious corporation, as defined in the Internal Revenue Code § 501(c)(3).

16.     TST created and sponsors the After School Satan Club in communities across the country.

17.     Defendant Saucon Valley School District is a political subdivision of the Commonwealth of Pennsylvania located in Northampton County.

18.     The District maintains its administrative offices at 2097 Polk Valley Rd, Hellertown, PA, 18055.

19.     TST has been—and continues to be—subject to the Defendant's customs, policies, and practices complained of herein.

## **FACTUAL ALLEGATIONS**

20.     Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this Complaint as if fully set out herein.

### *The Satanic Temple and the After School Satan Club*

21.     TST does not worship Satan. Satan is instead regarded as a literary figure who represents a metaphorical construct of rejecting tyranny, championing the human mind and spirit, and seeking justice and egalitarianism for all.

22.     As a church, TST promulgates Seven Tenets, which guide the church's operations as well as the lives of its individual members:

I.      One should strive to act with compassion and empathy toward all creatures in accordance with reason.

II.     The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

III.    One's body is inviolable, subject to one's own will alone.

IV.     The freedoms of others should be respected, including the freedom to offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.

V.      Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

VI.     People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

VII.    Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

23.     TST has distilled these Seven Tenets into seven Satanic virtues: benevolence, empathy, critical thinking, creative expression, personal sovereignty, compassion, and the pursuit of justice.

24.     TST and its adherents strive to apply these tenets and virtues to all aspects of their lives, including their understanding of fundamental and ultimate questions relating to life and death, right and wrong, and good and evil.

25.     TST's beliefs are sincerely held and practiced.

26.     Like many other churches and religious organizations, TST holds various events and programs to facilitate the practice of its tenets, including twice-weekly services and holiday and fellowship events.

27.     As part of its religious mission, TST also sponsors a youth program, like many other churches and religious organizations. The ASSC provides students a safe and inclusive alternative to other religious clubs that operate in public-school facilities.

28.     The ASSC offers enrichment programming—such as community service projects, games, nature-based activities, and arts and crafts—that is inspired by, and aligns with, the Satanic virtues. The ASSC helps children build social and emotional skills and provides a framework for helping them understand the world around them.

29.     The ASSC is open to youth ages 5 through 12.

30.     TST currently sponsors six active ASSCs in public schools across the country and is in the process of launching additional clubs in other school districts.

31.     Trained TST volunteers help conduct ASSC meetings in accordance with TST's tenets. All volunteers undergo extensive criminal background checks.

*__TST's application to use District facilities for the ASSC__*

32.     The District has opened up school facilities for broad use, including for civic, cultural, educational, and recreational activities, pursuant to Policy 707, "Use of School Facilities." Policy 707 is attached as Exhibit 1.

33.     The District's "Rules and Regulations for the Use of School Buildings, Facilities, and Equipment" allow a wide array of groups and individuals to use District facilities in accordance with five classifications: Group I (approved District activities); Group II (non-profit civic, service, or athletic organizations within the District's boundaries); Group III (non-profit, civic, service, or athletic organizations outside the District's boundaries); Group IV (individual/organizations for commercial purposes, located within the District boundaries); and Group V (individual/organizations for commercial purposes located outside the District boundaries).

34.     Pursuant to Policy 707, a number of individuals, organizations, and businesses have used District facilities in recent years, including but not limited to the Good News Club, privately operated sports camps, youth sports associations, the Scouts, Girls on the Run, the Lion's Club, and others.

35.     After being contacted by a local parent who requested that TST sponsor an ASSC in the District, TST applied on February 1, 2023,[2] to use the Saucon Valley Middle School's large group instruction ("LGI") room for ASSC meetings on March 8, 2023, April 12, 2023, and May 10, 2023.

36.     TST met all qualifications to use District facilities.

---

[2] TST submitted the application along with its affiliated non-profit, the Reason Alliance. The Reason Alliance's mission is to promote the non-theistic religious tenets of The Satanic Temple in various contexts.

37.     The District notified TST on February 16, 2023, that it had approved TST's application.

38.     TST began making arrangements with District staff for the March ASSC meeting and purchased supplies for the Club.

39.     Aware that the District has previously sent home permission slips in students' backpacks for the Good News Club's after-school meetings, TST modified its standard ASSC permission slip and parent introductory letter to reflect the Saucon Valley location and meeting dates, expecting that the materials would likewise be sent home with students.

40.     At the bottom of the permission slip, just above the parent/guardian signature line, is the statement that "[t]his is not an activity of the school or the School District." Similarly, the parent introductory letter stated in bold at the bottom of the document that the "After School Satan Club is not an activity of the School or the School District." The ASSC permission slip is attached as Exhibit 2.

41.     TST never had the opportunity to send its introductory letter or permission slip home to parents.

42.     Pointing to "Board Policy," Superintendent Vlasaty informed TST by email that "no flyers, etc. [for non-affiliated school organizations] can be provided to students/ families."

43.     When pressed further and informed that District officials had previously sent home permission slips for the Good News Club, Vlasaty claimed that she was "new to the Superintendent role" and "realized that this [District policy] was not being followed by our building administrators consistently and has since been resolved."

44.     On Monday, February 20, 2023, Superintendent Vlasaty sent out an email to parents about the ASSC.

45.    The email announced the District's decision to approve TST's application but made

clear that the approval was made reluctantly because it was required by law.

46.    Addressed to the "Saucon Valley Community," the email stated:

> The Saucon Valley School District is committed to open communication
> and for that reason you are receiving this letter to ensure you have accurate
> information regarding news from our campus.

> The District has long held policies and procedures in place which allowed
> varied community groups to use our publicly-funded facilities outside of the
> school day. This is common practice among school districts around the state
> and the nation. Religious groups are among those the District has allowed
> to rent our facilities over the years. By law, the District cannot discriminate
> among groups wishing to use the SVSD facilities.

> Consistent with the law and criteria set out in SVSD Board policy and
> regulations, the District has approved an organization known as the "After
> School Satan Club" (ASSC) to host gatherings after school hours, in the
> Saucon Valley Middle School. Students must have parent permission to
> attend any after school event hosted by any outside organization.

> It is very important to note that the District does not endorse any of the
> groups or content affiliated with groups that host after school events on
> District property. It is also important to note that the ASSC is not a District
> approved club.

> The Saucon Valley School District is committed to working to minimize
> any distractions this news may create while ensuring our focus remains on
> providing a safe and secure learning environment for our students and staff.

47.    Vlasaty's email was sent via Smore.com, an online messaging system used by the

District to provide updates to the community. The email is attached as Exhibit 3.

48.    The text of Vlasaty's email was also posted on the District's official Facebook page.

The District has since deleted the post from Facebook.

49.     As the local media rushed to cover the announcement, School Board President Susan Baxter reportedly told one outlet that "she [was] 'not convinced' the club would be using the middle school space, and said the district [was] 'still reviewing the situation.'"[3]

***The District's decision to rescind approval and prevent the ASSC from meeting at District schools***

50.     On February 21, 2023, one day after the District's Facebook post and email to parents, the District received a voicemail message threatening violence against students and staff at the middle school.

51.     On information and belief, the District also received numerous complaints about the decision to approve the ASSC.

52.     The phone threat referenced the District's decision to allow the ASSC to meet on campus.

53.     After receiving the threat, District officials closed all District schools for that evening (February 21, 2023) and the following day (February 22, 2023), as police investigated.

54.     On February 22, 2023, Superintendent Vlasaty sent out another email to parents announcing that, "[d]ue to this disruption and threat to the safety and welfare of our students and staff, I will be recommending a full review of the Satan Club's use of our facility." The email is attached as Exhibit 4.

55.     Two days later, the District rescinded its approval of TST's application and banned the ASSC from meeting at the middle school on the previously approved dates.

---

[3] Jenny Roberts, *A Lehigh Valley school district is opening its doors to an After School Satan Club. It says its hands are tied by the law*, The Morning Call (Feb. 21, 2023), https://www.mcall.com/2023/02/21/saucon-valley-satan-club/.

56.     In a February 24, 2023, letter to TST, Vlasaty stated that "the District was made aware of advertisements shared on social media for the Club on February 20, 2023," and "[t]hat [the] advertisement did not comply with Board Policy 707," which requires that "'individuals and community groups . . . clearly communicate that the activities are not being sponsored by the school district" when "advertising or promoting activities held at school facilities.'"  The February 24, 2023, letter is attached as Exhibit 5.

57.     According to Vlasaty's letter, the February 20th advertisement "did not clearly communicate that the After School Satan Club was not being sponsored by the District." She further claimed that, "[a]lthough the District is aware that upon very close examination of the flyer, there was a statement on the flyer in small print, 'This is not an activity of the school or the School District,' this statement was nearly illegible due to the miniscule size of its font." She also stated, without providing any details, that "other parts of the flyer and the advertisement of the flyer on social media strongly suggested that the Club was in fact being sponsored by the District."

58.     Upon information and belief, the February 20th "advertisement" referenced by Vlasaty was a Facebook post by Nikki Romy, an individual who is not employed by TST, is not associated with the ASSC, and was not asked or authorized by TST to post on behalf of the Club. The post included a graphic of the ASSC permission slip and the following text:

Hi Saucon parents!

I've got some fantastic news – Pennsylvania's very first After School Satan Club is launching at Saucon beginning March 8th! All children ages 5-12 are welcome. More details in the permission slip below!
Your kiddos do not have to be students of Saucon Elementary to join the club, and homeschooling students are welcome too! All children are required to have a signed permission slip from a parent or guardian to attend. Any adults attending who are not vetted volunteers must be accompanying a child with a permission slip.
Please reach out with any questions!

59.     As part of the District's "full review" of TST's application, it did not contact TST

to ask whether it authorized the February 20th post by Ms. Romy or to gather any other information

from TST.

60.     Vlasaty's letter asserted that "[t]his advertising choice has caused a substantial

disruption to the District's operations, interfering with the educational program of our schools."

She specifically pointed to "[t]he most significant disruption" on the evening of February 21, 2023,

when "the District received a threat apparently based on the District's approval of the Club using

District facilities[,] . . . [which] resulted in the District being closed on February 22, 2023, and

understandably has caused tremendous anxiety for our students, staff, and their families."

61.     Vlasaty's letter concluded that "[t]he Club may not convene at Saucon Middle

School or any other District facility" and explained:

> The fundamental basis for Board Policy 707 is to effectuate the Board of School
> Directors' intentions that the District's facilities be made available to organizations
> of the community for various activities so long as the scheduling of those activities
> does not interfere with the educational program of the District. The disruption to
> the District's operations resulting from [TST]'s violation of Policy 707, vis-à-vis
> its misleading advertising, has undoubtedly interfered with the educational program
> of the District, creating a substantial disruption to the education of the District's
> students.

62.     On the same day, Vlasaty emailed parents and posted on the District's Facebook

page a statement that that she had decided "to rescind approval for the use of the school district's

facilities" by the ASSC because TST "failed to meet the District requirements outlined in School

Board Policy 707[.]" According to Vlasaty, "[a]s a result of this violation, the educational

programming and activities of the District has been significantly impacted and it has caused

unequivocal disruption to the District's daily operations." She added: "Our community has

experienced chaos. Our students, staff and teachers have had to endure a threat to their safety and

welfare. The gravity of feelings of instability, anxiety and fear have been profound." The email is attached as Exhibit 6.

63.     At a school board meeting on February 28, 2023, Superintendent Vlasaty again conceded that denying or restricting TST's access to school facilities based on the group's viewpoint would be "unconstitutional viewpoint discrimination."

**_The District's pretextual basis for rescinding approval and prohibiting the ASSC from using school facilities_**

64.     The District's reliance on TST's alleged violation of Board Policy 707 to rescind approval of TST's application is pretextual.

65.     TST did not post anything on social media on February 20, 2023, regarding the ASSC, including the post identified above in paragraph 58.

66.     TST does not have any control over third parties' social media accounts.

67.     TST is aware of only one social media post made before February 21, 2023, by TST or TST staff regarding the Saucon Valley ASSC. On February 18, 2023, after being informed by Superintendent Vlasaty that the District would not send the ASSC's permission slip and parent introductory letter home with students, as school officials had for the Good News Club, the ASSC Campaign Director posted the ASSC permission slip—alongside permission slips for two ASSCs launching in other school districts—on her personal Facebook page.

68.     All three permission slips included the following statement: "This not an activity of the school or the School District" placed directly above the parent/guardian signature line.

69.     The posted permission slip for the Saucon Valley ASSC (attached as Exhibit 2) makes clear in other ways that _TST_, not the District, sponsors the ASSC. TST's sponsorship information is noted in the middle of the page, which states "SPONSORED BY: THE SATANIC TEMPLE AND REASON ALLIANCE."

70. Immediately below that, the permission slip directs parents to email assc@TheSatanicTemple.Com for more information and then includes a link to TST's webpage for the ASSC.

71. On the left side of the permission is the TST/ASSC logo. No District logos or other District-related images, slogans, or mascots appear on the form.

72. The permission slip also includes a QR code that links to a brochure about After School Satan Clubs, which states, among other things, that "[o]ur club is operated by The Satanic Temple" and "we do not operate under any specific school or school district."

73. Neither Board Policy 707 nor its accompanying rules and regulations mandate that a particular font size must be used in connection with the directive to "clearly communicate that the activities are not being sponsored by the school district[,]" and prior to rescinding approval of TST's application, the District never conveyed such a requirement to TST.

74. In fact, Board Policy 707 is extraordinarily vague. Neither Policy 707 nor its accompanying rules and regulations offer any specific guidance or detail as to what would or would not violate its requirement that third parties "clearly communicate that the activities are not being sponsored by the school district."

75. The font size for the disclaimer on the ASSC permission slip distributed on Facebook by the ASSC Campaign Director on February 18th, which states that ASSC "is not an activity of the school or the School District," is virtually identical to the font size used for the text of the non-discrimination disclaimer located at the bottom of the District's own official letterhead.

76. On February 28, 2023, the County of Northampton Office of the District Attorney ("D.A.") issued a press release announcing that a North Carolina resident, who had placed the

threatening call to the District on February 21, 2023, had been arrested in Charlotte, NC.[4] According to the D.A., the threatening voicemail message "expressed displeasure with Saucon Valley Middle School for allowing the After School Satan Club to utilize the school facilities." The suspect subsequently told police that "the After School Satan Club is trying to turn kids into devils" but that he had not intended to carry out his threat.

77.     Although the D.A.'s press release stated that the suspect reported finding out about the ASSC through Facebook, there is no evidence that the suspect might have refrained from his criminal actions if only TST had used a larger font size for its permission-slip disclaimer.

78.     Indeed, there is no evidence that the suspect saw TST's permission slip.

79.     In light of the District's February 20, 2023, Facebook post announcing its approval of the ASSC, thereby increasing online awareness of the issue, it is possible that the suspect learned about the ASSC as a result of the District's own conduct.

80.     In any event, as the District's letter to TST and the D.A.'s statement make clear, the suspect was not upset because he mistakenly believed that the District was sponsoring the ASSC. Rather, he was angry with the District *merely because the district had approved* the ASSC's use of school facilities.

81.     The threat received by the School District—which, according to the District, caused "significant disruption" to the District's educational programs—appeared to be an attempt to derail or shut down ASSC meetings at District facilities because the suspect disliked Satanism and TST's speech.

---

[4] *See Man arrested in relation to threats at Saucon Valley School*, Northampton Cnty. Dist. Att'y Press Releases (Feb. 28, 2023) ("Ceu Uk.pdf"), https://www.northamptoncounty.org/DISTAT/Pages/Press-Releases.aspx.

82.     Community objections to the District's initial approval of TST's application have

primarily been based on opposition to Satanism and TST's speech. To provide just a few examples:

• Superintendent Vlasaty stated at a school board meeting that she had "received hundreds of emails, voicemails, phone calls from community members frustrated by my decision to approve the club, angered that I placed the students in danger" and that some messages declared that she "should not be around children," is "woke," and is a Satan worshipper.[5]

• A District resident told a local news outlet that "Satanism is a very dark, dark thing."[6]

• A local reverend told a news station that "[a]ssociating it [the ASSC] with such a figure that we commonly equate to being evil. Not a good thing in my opinion."[7]

• A local resident who planned a prayer event in response to approval of the club told a news station: "[I]f we don't speak up for this type of outlandish disregard to those of who do have Judeo-Christian values, then when is it going to stop?"[8]

• Encouraging others to attend the prayer rally, an area resident posted on Facebook: "Saucon Valley Middle School is allowing an after school Satan Club starting on 3/8 and we are hoping it gets canceled for that date and remaining dates. Lure very impressionable minds in with crafts and fun all in Satans name. NO."

• A reader of *The Morning Call*, a regional newspaper, responded to a columnist's support for TST's First Amendment rights by proclaiming, "If this Satan club is allowed to flourish

---

[5] Kurt Bresswein, *Superintendent told her 2 small children 'should burn in hell' over Satan Club handling*, lehighvalleylive.com (Mar. 1, 2023), https://www.lehighvalleylive.com/bethlehem/2023/03/superintendent-told-she-her-2-small-children-should-burn-in-hell-over-satan-club-handling.html.

[6] Roberts *supra*.

[7] Alyana Gomez, *'After School Satan Club' causes controversy in Pennsylvania school district*, 6ActionNews/WPVI (Feb. 22, 2023), https://6abc.com/after-school-satan-club-satanic-group-saucon-valley-district-lehigh-news/12862066/.

[8] Rob Manch, *Superintendent to recommend review of After School Satan Club's use of facility at Northampton County middle school following threat that closed schools*, 69 News/WFMZ (Feb. 22, 2022), https://www.wfmz.com/news/area/lehighvalley/superintendent-to-recommend-review-of-after-school-satan-clubs-use-of-facility-at-northampton-county/article_90e8189e-b2e2-11ed-9a32-a7f1fae6bdba.html.

throughout the country you can expect even more mass shootings than we're already plagued with while you espouse Constitutional obligations to the dead."[9]

• The pastor of the Saucon Valley Community Church, which sponsors the Good News Club at the District's middle school, gave a livestreamed sermon on February 26, 2023, entitled, "Crushing Satan," which railed against the ASSC and called TST's virtues "evil."[10]

83. TST condemns all threats of violence. The threat against the District and any threats against the Superintendent are unacceptable and reprehensible.

84. These threats and any disruption to school facilities, however, were not caused by TST's conduct.

85. The District's decision to rescind approval of TST's application under Policy 707 due to the disruption caused by the February 20th threat and other complaints gave objectors a "heckler's veto" and was thus inherently and expressly based on the viewpoint and/or content and religious beliefs that would have been expressed and exercised at the ASSC meetings.

86. Counsel for TST sent a letter to the SVSD solicitor on March 2, 2023, advising the District that its decision to deny ASSC access to school facilities for club meetings violates the First Amendment.

87. The solicitor responded by email on March 7, 2023, stating that "the District will be standing by its decision in this matter."

88. Counsel for TST sent a subsequent email to the solicitor on March 17, 2023, asking whether the District would allow ASSC to use school facilities for its meetings if the ASSC included a disclaimer on its advertising materials that was acceptable to the District.

---

[9] Paul Muschick, *Readers react to support for Satan Club's rights – 'What now? Do we let skinhead Neo-Nazi clubs in?',* The Morning Call (Feb. 28, 2023).

[10] Crushing Satan, Sermons, Saucon Community Church (Feb. 26, 2023), https://www.sauconbfc.org/media/

89.     The solicitor responded that he would not be able to meet with his clients to discuss the matter until March 28, 2023. On March 29, 2023, counsel for TST followed up with the solicitor by email.

90.     On March 30, 2023, the solicitor responded to counsel's email, stating: "The District will not be revisiting the application this year due to the proximity of the disruptive events from last month. This does not foreclose the Satanic Temple from applying for use in the future, however not at this time."

### *The District's discriminatory enforcement of Policy 707*

91.     The District does not enforce Policy 707 equally against all non-school organizations that use school facilities.

92.     Non-school organizations that use District facilities have repeatedly circulated promotional materials for events held at District schools without "clearly communicat[ing] that the activities are not being sponsored by the school district."

93.     *The Good News Club* typically meets in the spring at Saucon Valley Middle School. The club has distributed flyers and permissions slips that—unlike the ASSC permission slip cited by District officials—do not have any explicit disclaimer language, in any size font, making clear that its meetings are not District-sponsored activities.

94.     District officials knew that the Good News Club promotional materials did not comply with Policy 707. In the winter or spring of 2022, school officials sent Good News Club permission slips home with students at Saucon Valley Elementary School. The permission slip advertised meetings at the middle school on "Thursdays for 5 weeks, Mar 10 through Apr 7, from "Dismissal until 5 pm." The form did not include any express disclaimer of District sponsorship.

A photo of the Good News Club permission slip sent home with students in 2022 is attached as Exhibit 7.

95.     On information and belief, school officials have similarly distributed Good News Club permission slips to students prior to 2022.

96.     The Good News Club is sponsored by the Saucon Community Church and Child Evangelism Fellowship.

97.     Through at least February 23, 2023, the front/landing page for the Church's website linked to a PDF of a permission slip with the file name "Good-News-Club-Permission-Slip-2023." The permission slip was identical to the 2022 permission slip sent home with students, except that it stated that meetings would take place on "Thursdays for 6 weeks, Feb 23 through Mar 30." Like the 2022 permission slip, the 2023 form did not have any explicit disclaimer of District sponsorship. The 2023 Good News Club permission slip, with no explicit disclaimer, remained on the Church's website through at least February 27, 2023. It is attached as Exhibit 8.

98.     On information and belief, that permission slip remained on the church's website until it was replaced by a PDF of a revised permission slip, which now includes an underlined disclaimer stating in red, "The Good News Club is not affiliated with the Saucon Valley School District in any way." According to the PDF file's metadata, the "Saucon Permission Slip spring 2023 revised" was not created until March 1, 2023, at 6:06 p.m.

99.     The District has not provided TST the same the opportunity to amend its permission slip.

100.     In addition to the non-conforming permission slip, the church has also posted advertisements for Good News Club meetings at Saucon Valley Middle School on its official Facebook page. The advertisements did not have any explicit disclaimer of District sponsorship.

101.    On February 21, 2023, at 3:55 p.m., the church posted a colorful flyer with a graphic of students reading the Holy Bible, musical notes surrounding them, and one student holding a guitar. The flyer urged "join us for a time of singing, games, and Bible lessons" at the Saucon Valley Middle School. In a message accompanying the post, the Church stated:

> Now, more than ever, children need the Gospel. That's why Saucon Community Church is sponsoring the Child Evangelism Fellowship Good News Club at the Saucon Valley School District.
> Every Thursday, beginning February 23 through March 30, the Good News Club will be meeting for games, songs, and Bible lessons. Open for students from 2nd to 4th grade!
> If you wish to enroll your child, please visit www.sauconbfc.org to download the registration form or email us at info@sauconbfc.org.

102.    Later in the day, the church re-shared the post, tagging the Hellertown, Pennsylvania, Facebook page and urging people: "Spread the word!" And on February 22, 2023, at 10:34 a.m., the church added another Facebook post, identical to its initial post on February 21st. All three Facebook posts have since been deleted. None included any language explicitly disclaiming District sponsorship.

103.    The Church continues to promote Good News Club meetings at Saucon Valley Middle School on the front/landing page of its website without any explicit disclaimer of District sponsorship. From at least mid-February through the date of this filing, the front/landing page of the Church's website has advertised Good News Club meetings at the middle school without making clear that the meetings are not sponsored or endorsed by the District. Screenshots of the Church's website from the morning of March 30, 2023, are attached as Exhibit 9.  The website states:

**GOOD NEWS CLUB**

Now, more than ever, children need the Gospel! That's why Saucon Community Church is sponsoring the Child Evangelism Fellowship Good News Club at the Saucon Valley District.

Every Thursday, beginning February 23 to March 30, after school, the Good News Club will be meeting for games, songs, and Bible lessons. Open to all students from 2nd to 4th grade!

 If you wish to enroll your child, you can download the registration form here. You can email us the completed form at info@sauconbfc.org or simply email us the name of your child and they can bring the form with them at the meeting.

104.    Despite the fact that materials promoting Good News Club meetings at District facilities have repeatedly failed to comply with Policy 707, the District has continued to allow the Good News Club to meet at the middle school.

105.    ***Girls on the Run Lehigh Valley*** ("GOTR") has used District facilities across multiple years while distributing promotional materials that—unlike the ASSC permission slip cited by District officials—do not have any explicit disclaimer language, in any size font, making clear that the meetings are not District-sponsored activities.

106.    District officials knew that the GOTR promotional materials did not comply with Policy 707. In 2019 and 2020, GOTR sponsored a ten-week "Heart & Sole Program" at Saucon Valley Middle School. On January 10, 2019, February 21, 2019, and January 22, 2020, District officials posted the group's promotional flyer on the official Facebook page for the middle school. On one post, school officials wrote:

Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade. For more information visit: www.gotrlehighvalley.org.

Another post warned, "Last Call for Girls on the Run, registration closes on Friday, March 1st. See Flyer below.  Flyers also available in the Main Office." And a third post exclaimed, "Calling all 6th-8th grade girls. The Girls on the Run Heart & Sole Program registration starts on 2/1/20 and runs through 3/1/20. See attached flyer for more information!"

107.    GOTR also has hosted programs at the Saucon Valley Elementary School. On March 5, 2021, District officials posted a GOTR flyer on the school's official Facebook page, with a message:

> Girls On The Run registration for the spring 2021 season is open! At this time, GOTR is open to 4th grade girls only because of limited space available. If the roster is not filled, we will expand registration to 3rd graders. Sign up soon to secure your spot! Girls On The Run is so much fun!!

And in September 2022, District officials again posted flyers on three separate occasions for the program on the elementary school's official Facebook page, noting that the flyer would be sent home in students' backpacks and that, "[s]pots are filling up! This is a great program open to girls in 3rd and 4th grade. See registration information below."

108.    None of the GOTR flyers distributed by District officials included any express disclaimer of District sponsorship.

109.    Despite the fact that the group's promotional materials have repeatedly failed to comply with Policy 707, the District has continued to allow GOTR to use school facilities.

110.    *A Scout Troop and Cub Pack* hosted a talk by Astronaut Terry Hart in the Saucon Valley Middle School's LGI room on October 22, 2022.

111.    Unlike the ASSC permission slip cited by District officials, a flyer promoting the event did not have any explicit disclaimer language, in any size font, making clear that it was not a District-sponsored activity.

112.    District officials knew that the flyer for the event did not comply with Policy 707. On October 6, 2022, they posted the flyer on the official Facebook page of the Saucon Valley Elementary School, stating, "This opportunity is open to both Elementary and Middle School Students." On October 26, 2022, officials posted the flyer again on the elementary school Facebook page, with the message: "Just a reminder about this great opportunity for students and parents to attend."

113.    On information and belief, despite the fact the promotional materials did not comply with Policy 707, the District permitted the Scouts to proceed with the event using school facilities.

114.    In July 2021, Joetta Sports and Beyond held a privately operated four-day speed, agility, and track *sports camp* at Saucon Valley High School for students ages 7 to 18.

115.    Unlike the ASSC permission slip cited by District officials, the promotional flyer and registration form/waiver for the camp did not include explicit disclaimer language, in any size font, making clear that the camp was not a District-sponsored activity.

116.    District officials knew that the camp's promotional materials did not comply with Policy 707. In both April and June, they posted a flyer for the camp on the official Facebook page for the Saucon Valley Middle School. District officials also posted the camp's flyer and registration form on Saucon Valley High School's Facebook page on in June, with a note: "Please see the attached for a summer camp opportunity to be held at SVHS." The statement was followed by two paw prints, presumably to connote the school's panther mascot.

117.    On information and belief, despite the fact the camp's promotional materials did not comply with Policy 707, the District permitted the camp to proceed using school facilities.

118.    The ***Saucon Valley Youth Sports Association*** held an "open house event" in the Saucon Valley Elementary School cafeteria on the evening of May 11, 2022, for younger students interested in cheerleading.

119.    Unlike the ASSC permission slip cited by District officials, a flyer promoting the cheerleading event did not have any explicit disclaimer language, in any size font, making clear that it was not a District-sponsored meeting.

120.    District officials knew that the flyer for the cheerleading event did not comply with Policy 707. On April 25, 2022, they posted the flyer on the official Facebook page for the elementary school.

121.    On information and belief, despite the fact the Association's promotional materials did not comply with Policy 707, the District nevertheless permitted the Association to continue using school facilities.

122.    ***Saucon Valley Youth Basketball*** ("SVYB") has held try-outs, practices, and some games at District schools. For example, for 2022, the landing/front page of the SVYB's website noted that "[t]ravel tryouts will be Saturday October 22nd and Tuesday October 25th in the SV Middle School gym." The website did not include an explicit disclaimer, in any size font, making clear that the tryouts were not District-sponsored.

123.    District officials have shared promotional materials for the SVYB on the official Facebook page of the Saucon Valley Elementary School. On September 28, 2022, they shared a flyer that asked, "Who's Ready to Play" and included an image of a large basketball and a panther, which is the District's mascot. The post stated: "Saucon Valley Youth Basketball has opened registration for the 2022-2023 season! Teams will be forming for girls and boys in grades 1-8. For more information or to sign up, go to www.svyb.org. Please register by October 15th." Another

Saucon Valley Elementary School Facebook post on October 10, 2022, shared a different flyer with similar imagery. On October 8, 2021, District officials shared a flyer for the SVYB's 2021 season.

124.    The SVYB also has posted on social media numerous advertisements for the try-outs and other events held at the middle school.

125.    Unlike the ASSC permission slip cited by District officials, none of the SVYB flyers promoted by the District included an explicit disclaimer, in any size font, making clear that the basketball league, and any SVYB events that may take place at District schools, are not sponsored by the District.

126.    On information and belief, despite the fact that the SVYB promotional materials did not comply with Policy 707, the District has permitted the SVYB to continue using school facilities.

127.    On information and belief, other individuals and organizations using District facilities in recent years have likewise failed to include an explicit disclaimer of District sponsorship on some or all promotional materials and advertisements. For example, the **Saucon Valley Lion's Club** has used the Saucon Valley High School gymnasium for its annual Gem, Mineral, and Jewelry show. Social media posts and other advertising materials promoting the event did not include an explicit disclaimer of District sponsorship.

128.    On information and belief, despite the fact that these groups have failed to conform their promotional materials with Policy 707, the District has not denied them access to school facilities.

129.    Many of the non-school organizations that use District facilities—but have not expressly disclaimed District sponsorship of their events on promotional materials—are similarly

25

situated to the ASSC and TST. For example, in a recently filed lawsuit seeking access to a school district's facilities for the Good News Club, Child Evangelism Fellowship of Rhode Island explained that "Good News Clubs are afterschool enrichment programs providing religious and other teaching and activities to encourage learning, spiritual growth, and service to others, as well as social, emotional, character, and leadership development."[11]

130.    The District's failure to enforce Policy 707 against other non-school organizations—in the same manner, and to the same extent, that it is purporting to enforce the Policy against TST—demonstrates that the District's reliance on Policy 707 to rescind approval of TST's application and prohibit the ASSC from using school facilities is pretextual.

131.    Statements made by school board members provide further evidence of pretext. For example, the School Board Vice President derided TST by accusing it of using the community as a "a pawn for people to make it a place to make their points."

132.    The District's failure to enforce Policy 707 against other non-school organizations—in the same manner, and to the same extent, that it is purporting to enforce the Policy against TST—constitutes a preference for these organizations based on their viewpoints, resulting in further viewpoint discrimination against TST.

133.    The District's failure to enforce Policy 707 against the Good News Club—in the same manner, and to the same extent, that it is purporting to enforce the Policy against TST—constitutes a preference for the religion promoted by the Good News Club, resulting in further religious discrimination against TST.

---

[11] Compl. (Doc. 1) ¶ 12, Child *Evangelism Fellows of Rhode Island, Inc., v. Providence Pub. Sch. Dist.* (Mar. 10, 2023), No. :23-cv-00099-MSM-LDA.

### *The District's protocols for addressing threats and security concerns*

134.     The District has established protocols for addressing threats and security concerns.

135.     Board Policy 805 (Emergency Preparedness) states: "The Board shall provide the facilities, equipment and training necessary to minimize the effects of all hazards and emergencies, including but not limited to natural disasters, hazardous chemicals, fires, weapons, bomb threats, terrorism, communicable diseases and pandemics. Advance planning and comprehensive implementation are key components in ensuring the protection of the school community. … The emergency preparedness plan shall be reviewed at least annually and modified as necessary."

136.     The District's protocols and practices for addressing threats have included, among other tools, suspending classes, notifying law enforcement of the threat, working with law enforcement to uncover and neutralize the source of the threat, and temporarily increasing the presence of police or other security officers on campus.

137.     These protocol and practices have been used to address previous serious threats made against the District.

138.     For example, in 2017, an email was sent to 350 eighth and ninth graders in the District, threatening to "shoot up the school."[12] School officials notified police of the threat and worked with them to identify an IP address from which the email was sent. As a result of the threat, the police department increased its presence on campus in the following days,[13] and the District

---

[12] Matt Coughlin, *Saucon Valley students received email threatening to 'shoot up' school*, Morning Call (Aug. 17, 2017).

[13] *See* Josh Popichak, *After Email Threat, Schools Will Have Heightened Police Presence on First Day*, Saucon Source (Aug. 24, 2017), https://sauconsource.com/2017/08/24/email-threat-schools-will-heightened-police-presence-first-day/.

announced on Facebook that all calendar events leading up to the start of school the following week would "continue as usual."

139.    In 2018, a District student threatened a shooting at school.[14] The District notified police, who referred the student for criminal charges.

140.    In 2019, shooting threats were made by two different students at District schools.[15] Both times, the District worked with local law enforcement to resolve the threat and, on at least one occasion, the District arranged for an increased police presence around the district campus after the threat was discovered.

141.    The District's established protocol were sufficient to deal with the threat made in connection with its approval of the ASSC application. The District notified the police and worked with investigators to identify the individual who made the threat so that he could be detained. In addition, the District arranged for an increased presence by the local police department during student arrival and dismissal, as well as throughout the day, on February 23 and February 24. And, on both days, the District also employed four private, armed security guards on campus.

---

[14] *See* Josh Popiak, *SV Student Who Allegedly Threatened Shooting 'No Longer in Attendance,'* Saucon Source (Sept. 21, 2018) https://sauconsource.com/2018/09/21/sv-student-who-allegedly-threatened-shooting-no-longer-in-attendance/.

[15] Josh Popiak, *Student Accused of Threatening School Pointed Rifle at Camera: Police*, Saucon Source (Mar. 2019), https://sauconsource.com/2019/03/27/student-accused-threatening-school-pointed-rifle-camera-police/; Josh Popiak, *Threat Allegedly Made Against Saucon Students, Teachers Saucon Source* (Mar. 2019), https://sauconsource.com/2019/03/27/threat-allegedly-made-saucon-students-teachers/.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Free Speech Clause, First Amendment to the U.S. Constitution)

142.    Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs in this Complaint as if fully set out herein.

143.    Defendant's policy, practice, and custom vis-à-vis TST and the ASSC violates the Free Speech Clause of the First Amendment, as applied to the states through the Fourteenth Amendment.

144.    Defendant has intentionally created a forum that allows the use of District facilities for broad purposes by a wide array of individuals and organizations.

145.    Defendant's decision under Policy 707 to rescind approval of TST's application and prohibit the ASSC from using school facilities is unconstitutionally based on the viewpoint and/or content of Plaintiff's speech, including Plaintiff's particular religious viewpoint.

146.    Specifically, Defendant's decision under Policy 707 is based on an unconstitutional heckler's veto arising from community members' and others' disagreement with, and hostility toward, the viewpoint and/or content of Plaintiff's speech, as well as animus toward Plaintiff's religion—as illustrated by (a) those who have complained, protested, and made threats against the Defendant for initially approving TST's application to use school  facilities, and (b) the Defendant's reliance on those threats in rescinding approval of TST's application.

147.    Defendant's decision under Policy 707 to rescind approval of TST's application and prohibit the ASSC from using school facilities is also unconstitutionally based on some District officials' personal animus against Plaintiff's religious tenets and the viewpoint and/or content of Plaintiff's speech, as well as those District officials' discomfort with the fact that many individuals in the community view Plaintiff as expressing controversial and divisive views. As the

U.S. Court of Appeals for the Third Circuit has recognized, "[t]o exclude a group simply because it is controversial or divisive is viewpoint discrimination."[16]

148.    Defendant's stated reason for rescinding approval of TST's application and prohibiting the ASSC from using school facilities under Policy 707 is a pretext offered in an effort to disguise the Defendant's unconstitutional desire to suppress Plaintiff's speech.

149.    Even if Defendant's reason for rescinding approval of TST's application and prohibiting the ASSC from using school facilities under Policy 707 were not a pretext, it still constitutes viewpoint and/or content discrimination in violation of the Free Speech Clause because Defendant has failed to enforce—in the same manner, and to the same extent as against Plaintiff— Policy 707 against similarly situated speakers whose speech is more acceptable to Defendant, the community, and others.

150.    Policy 707's provision relating to disclaimers is unconstitutionally vague and overbroad, both facially and as applied to Plaintiff.

151.    As illustrated by Defendant's decision to enforce Policy 707 against Plaintiff but not—in the same manner, and to the same extent—against similarly situated speakers, Policy 707 unconstitutionally vests SVSD officials with unbridled discretion to decide which organizations will be permitted access to SVSD facilities for after-school programs in a way that disfavors unpopular speakers.

152.    Defendant's decision to rescind approval for TST's application and prohibit the ASSC from using school facilities under Policy 707 fails to leave open sufficient alternative channels of communication.

---

[16] *Child Evangelism Fellowship of New Jersey Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 527 (3d Cir. 2004).

153.    Neither Defendant's application of Policy 707, nor its decision to rescind approval for the ASSC's use of school facilities, serves any rational, legitimate, significant, or compelling governmental interest.

154.    Neither Defendant's application of Policy 707, nor its decision to rescind approval for the ASSC's use of school facilities, is reasonably or narrowly tailored to any rational, legitimate, significant, or compelling governmental interest.

## SECOND CLAIM FOR RELIEF
### (Establishment Clause, First Amendment to the U.S. Constitution)

155.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 141 in this Complaint as if fully set out herein.

156.    Defendant's policy, practice, and custom vis-à-vis TST and the ASSC violates the Establishment Clause of the First Amendment, as applied to the states through the Fourteenth Amendment.

157.    "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."[17]

158.    Defendant's discriminatory treatment of the ASSC and Plaintiff, a Satanist church, as compared to its treatment of the Good News Club and its sponsoring Christian church, violates this fundamental principle of denominational neutrality.

159.    Specifically, Defendant is unconstitutionally denying TST access to school facilities, while simultaneously allowing the same access to favored religious groups.

160.    In addition, Defendant knew that the Good News Club has repeatedly distributed promotional materials that did not expressly disclaim District sponsorship of the Club. Yet,

---

[17] *Larson v. Valente*, 456 U.S. 228, 244 (1982).

Defendant took no corrective action and even distributed the non-conforming permission slips to students. Despite the Good News Club's repeated failure to comply with Policy 707, Defendant still allows the Good News Club to meet at District facilities.

161.    By contrast, Defendant refused to distribute to students Plaintiff's ASSC permission slip, which explicitly disclaimed District sponsorship. Defendant further applied an unequal standard under Policy 707, finding that the explicit disclaimer on the ASSC permission slip was inadequate even though it was more aligned with Policy 707's directive than the Good News Club permission slip, which did not include any explicit disclaimer of District sponsorship.

162.    Because Defendant's decision to deny TST access to school facilities, while simultaneously allowing the same access to favored religious groups, violates the principle of denominational neutrality, the decision is subject to strict scrutiny.

163.    Defendant's decisions to deny distribution of the ASSC's permission slip and to apply an unequal standard under Policy 707 against TST are likewise subject to strict scrutiny because they also violate the principle of denominational neutrality.

164.    Defendant's decision to prohibit TST from holding ASSC meetings at District facilities—as well as its decisions to refuse distribution of the ASSC permission slip and to apply an unequal standard under Policy 707 to TST—do not serve a compelling interest. Even if they did, these decisions are not narrowly tailored to, or the least restrictive means of, achieving that interest.

165.    The principle of denominational neutrality dates back to the Founding, and violations of this principle are a hallmark of unconstitutional religious establishment.

166.    Thus, Defendant's decision to ban TST holding ASSC meetings at District facilities—as well as its decisions to refuse distribution of the ASSC permission slip and to apply

an unequal standard under Policy 707 to TST—also fail to satisfy the historical test set forth in

*Kennedy v. Bremerton School District*.[18]

### THIRD CLAIM FOR RELIEF
### (Free Exercise Clause, First Amendment to the U.S. Constitution)

167.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 141 in this Complaint as if fully set out herein.

168.    Defendant's policy, practice, and custom vis-à-vis TST and the ASSC violates the Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment.

169.    Defendant's decision to rescind approval of TST's application and prohibit the ASSC from using school facilities substantially burdens Plaintiff's exercise of sincerely held religious beliefs by preventing Plaintiff from fulfilling its religiously motivated mission to provide an alternative, inclusive after-school religious enrichment program for Satanist children and other children who may not be welcomed, or who may feel uncomfortable, at other after-school religious clubs.

170.    The Supreme Court has recognized that the Free Exercise Clause "protect[s] religious observers against unequal treatment" and that the government may not impose "special disabilities on the basis. . . of religious status" or identity.[19] Defendant has violated these fundamental principles by denying Plaintiff the benefit of access to school facilities based on some District officials' own anti-Satanist animus and the anti-Satanist animus of community members and others.

---

[18] 142 S. Ct. at 2428.

[19] *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019-21 (2017) (internal quotation marks omitted).

171.     Defendant's invocation of Policy 707 to reach this result also violates the free-exercise principle that the government may not single out one faith for disfavorable treatment or "devise mechanisms, overt or disguised, designed to persecute or oppress a religion or its practices."[20] Defendant has improperly and unconstitutionally wielded Policy 707 to target Plaintiff's religious exercise for disfavorable treatment while allowing comparable religious and secular expression and activities to proceed in violation of the same standards allegedly violated by Plaintiff.

172.     Defendant's decision to ban TST from using of District facilities—as well as its decisions to refuse distribution of the ASSC permission slip and to apply an unequal standard under Policy 707 to TST—do not serve a compelling interest. Even if they did, these decisions are not narrowly tailored to, or the least restrictive means of, achieving that interest.

## FOURTH CLAIM FOR RELIEF
### (Article I, § 7 of the Pennsylvania Constitution)

173.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 141 in this Complaint as if fully set out herein.

174.     Article I, § 7 of the Pennsylvania Constitution states that "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

175.     Defendant's refusal to allow TST to hold meetings of the ASSC in its facilities after school, while allowing other similar groups to do so, violates TST's rights under Article I, Section 7 of the Pennsylvania Constitution.

---

[20] *Id.* at 2026 (internal quotation marks omitted).

## RELIEF REQUESTED

Plaintiff respectfully requests the following relief in the form of a judgment against the Defendant, Saucon Valley School District:

A. An order declaring that Defendant's decision to rescind approval for TST's application and prohibit the ASSC from using school facilities is unconstitutional under the Free Speech Clause, Free Exercise Clause, and Establishment Clause of the First Amendment;

B. An order declaring that Defendant's Policy 707 is facially vague and overbroad;

C. An order preliminarily and, thereafter, permanently enjoining Defendant and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from continuing to unlawfully deny Plaintiff access to District facilities, which makes clear that the District:

1. Must allow the ASSC to meet at the Saucon Valley Middle School at the times and on the days previously approved by the District;

2. Must allow the ASSC to make up the missed March meeting and any other missed meetings;

3. Must distribute ASSC's permission slip for students to take home in the same manner that it has previously distributed permission slips for the Good News Club;

4. Shall not impose any other unconstitutional conditions on Plaintiff or the ASSC, including but not limited to a security fee based on any anticipated reaction, protest, or opposition to the ASSC's meetings; and

5. Shall not retaliate against TST, the ASSC, or any member or attendee of ASSC meetings for objecting to Defendant's unlawful practices and bringing this action— including with respect to TST's future use of District facilities beyond this school year.

D. Entry of judgment for Plaintiff against Defendant for compensatory damages and/or nominal damages in an amount to be determined by the Court;

E. An award, from Defendant to Plaintiff, of reasonable attorneys' fees and costs incurred in connection with this action, pursuant to 42 U.S.C. § 1988;

F. An order retaining this Court's jurisdiction of this matter to enforce the terms of the Court's orders; and

G. Such further and different relief as is just and proper.

Respectfully submitted,

Sara J. Rose (PA Bar No. 204936)
Richard T. Ting (PA Bar No. 200438)
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7864
*srose@aclupa.org*
*rting@aclupa.org*

Daniel Mach (D.C. Bar No. 461652)*
Heather L. Weaver (D.C. Bar No. 495582)*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
*dmach@aclu.org*
*hweaver@aclu.org*

*Counsel for Plaintiff*
*\*Motion for Pro Hac Vice Admission*
*Forthcoming*

*/s/ Will W. Sachse*
Will W. Sachse (PA Bar No. 84097)
Noah Becker (PA Bar No.327752)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2496
*will.sachse@dechert.com*
*noah.becker@dechert.com*

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the

foregoing paragraphs 1–141 above are true and correct.

Doug Misicko,
Co-Director, The Satanic Temple, Inc.