## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>    Plaintiff,<br><br>       v.<br><br>SAUCON VALLEY SCHOOL DISTRICT,<br><br>    Defendant. | Civil No.: 5:23-cv-01244<br><br>**ELECTRONICALLY FILED**<br><br>**IMMEDIATE RELIEF SOUGHT** |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

On March 30, 2023, Plaintiff, The Satanic Temple, Inc., filed a Verified Complaint in this Court against Defendant Saucon Valley School District ("SVSD" or "the District"). The Complaint alleges that the District violated Plaintiff's rights under the First Amendment of the U.S. Constitution and Article I, § 7 of the Pennsylvania Constitution by denying Plaintiff access to SVSD facilities to hold meetings of the After School Satan Club ("ASSC").

On February 1, 2023, Plaintiff applied to hold ASSC meetings at the District's middle school on March 8, 2023, April 12, 2023, and May 10, 2023. Although the District initially approved Plaintiff's application—correctly explaining in a Facebook post and an email to parents that, "[b]y law, the District cannot discriminate among groups wishing to use the SVSD facilities"—it quickly rescinded approval in response to complaints from the public and a threat made against the middle school. (Ver. Compl. ¶¶ 50-62.) In a February 24, 2023, letter to Plaintiff, SVSD Superintendent Jaime Vlasaty prohibited the ASSC from meeting on the previously approved dates, claiming that Plaintiff had violated SVSD policy because a disclaimer of District

1

sponsorship on the ASSC permission slip was too small. (*Id.* ¶¶ 56-60 & Ex. 5.)  Due to this decision, TST was unable to hold its March 8, 2023, meeting.

On March 17, 2023, counsel for Plaintiff sent an email to the District's solicitor inquiring whether SVSD officials would allow the ASSC to use school facilities for its future meetings if TST included a disclaimer on its materials that was acceptable to the District. (*Id.* ¶ 88.) On March 30, 2023, the solicitor responded that the District would not allow the ASSC to meet during this school year. (*Id.* ¶ 90.) Therefore, without immediate injunctive relief from this Court, the ASSC will be unable to hold its second meeting, previously scheduled for April 12, 2023.

Accordingly, for the reasons set forth in the accompanying memorandum, Plaintiff hereby moves this Court to issue a temporary restraining order and/or preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a)-(b) and the Free Speech Clause of the First Amendment to the U.S. Constitution, enjoining SVSD and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them from denying Plaintiff access to SVSD facilities to hold meetings of the ASSC, as well other injunctive relief outlined in the Verified Complaint and Proposed Order that accompanies this motion.

Plaintiff seeks this Order pending final disposition of its claims that Defendant's customs, policies, and practices violate the Free Speech Clause, the Establishment Clause, and the Free Exercise Clause of the First Amendment, as well as Article I, § 7 of the Pennsylvania Constitution.

In support of this Motion, Plaintiff relies upon the Verified Complaint  and Plaintiff's Brief In Support of Motion for Temporary Restraining Order and/or Preliminary Injunction, which is attached to Plaintiff's Motion to Exceed the Page Limits.

Respectfully Submitted,

Dated: March 31, 2023

*/s/ Will W. Sachse*
Will W. Sachse (PA Bar No. 84097)

Sara J. Rose (PA Bar No. 204936)
Richard T. Ting (PA Bar No. 200438)
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7864
*srose@aclupa.org*
*rting@aclupa.org*

Noah Becker (PA Bar No.327752)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2496
*will.sachse@dechert.com*
*noah.becker@dechert.com*

Daniel Mach (D.C. Bar No. 461652)*
Heather L. Weaver (D.C. Bar No. 495582)*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
*dmach@aclu.org*
*hweaver@aclu.org*

*Counsel for Plaintiff*

*\*Motion for Pro Hac Vice Admission Pending*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

THE SATANIC TEMPLE, INC.

    Plaintiff,

    v.

SAUCON VALLEY SCHOOL DISTRICT,

    Defendant.

Civil No.: 5:23-cv-01244

**ELECTRONICALLY FILED**

**IMMEDIATE RELIEF SOUGHT**

## ORDER

AND NOW this _____ day of _____, it is hereby ORDERED that Plaintiff's motion for Temporary Restraining Order and/or Preliminary Injunction is GRANTED. It is hereby ORDERED that Defendant Saucon Valley School District and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them (collectively "SVSD") are hereby preliminarily enjoined from denying The Satanic Temple access to SVSD facilities to hold meetings of the After School Satan Club (ASSC).

It is further ORDERED that:

1. SVSD must permit the ASSC to meet at the Saucon Valley Middle School at the times and on the days previously approved by SVSD;

2. ASSC must be permitted to reschedule its missed meeting from March;

3. SVSD must distribute ASSC's permission slip for students to take home in the same manner that is has previously distributed permission slips for other organizations;

4. SVSD shall not impose any other unconstitutional conditions on The Satanic Temple or the ASSC, including but not limited to a security fee based on anticipated reaction, protest, or opposition to the ASSC's meetings; and

5. SVSD shall not retaliate against The Satanic Temple, the ASSC, or any member or attendee of ASSC meetings for objecting to SVSD's unlawful practices and bringing this action, including with respect to any future uses of SVSD facilities beyond this school year.

**BY THE COURT:**

_____

THE SATANIC TEMPLE, INC.

    Plaintiff,

    v.

SAUCON VALLEY SCHOOL DISTRICT,

    Defendant.

Civil No.: 5:23-cv-01244

**ELECTRONICALLY FILED**

**IMMEDIATE RELIEF SOUGHT**

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND/OR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 7

I.  Plaintiff Is Likely to Succeed on the Merits of Its Free Speech Claim.............................. 8

  A.  The District's decision to rescind approval of TST's application and prohibit the ASSC from using school facilities is impermissibly based on TST's "controversial" viewpoint and objectors' reactions to that viewpoint................. 10

    1.  The District's rationale for prohibiting the ASSC from meeting at the middle school is a pretext for viewpoint discrimination........................... 10

    2.  The District's suppression of TST's speech based on others' reactions to that speech constitutes viewpoint discrimination. ..................................... 14

  B.  Even If the District's Prohibition on the ASSC's Use of School Facilities Does Not Discriminate Against TST's Viewpoint, It Is an Impermissible Content-Based Restriction. ...................................................................................................... 17

    1.  The District has created a designated public forum for after-school meetings and events. ................................................................................. 17

    2.  The District's prohibition on the ASSC's use of school facilities constitutes impermissible content-based discrimination ......................... 19

      a.  The District's interests are not compelling. ................................... 20

      b.  The District's prohibition on the ASSC's use of school facilities is not narrowly tailored to, or the least restrictive means of, furthering a compelling interest. .................................................................. 22

II.  The Remaining Preliminary Injunction Factors Weigh in TST's Favor........................... 23

CONCLUSION................................................................................................................... 25

# INTRODUCTION

As the U.S. Supreme Court recently explained, under the First Amendment "protected speech or religious exercise [does not] readily give way to a 'heckler's veto.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022) (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001)). Accordingly, when the government opens a forum for expressive activity, it cannot ban a particular speaker because members of the public dislike or protest the speaker's viewpoint or demonstrate animus toward the speaker's religion. But that is exactly what happened last month in the Saucon Valley School District ("SVSD" or "the District").

Pursuant to SVSD policy, the District has permitted a wide array of outside organizations and individuals to host events on school property. For example, the Good News Club, which is sponsored by a church and Child Evangelism Fellowship, holds weekly after-school meetings at the Saucon Valley Middle School. Plaintiff The Satanic Temple ("TST"), a nontheistic religious organization, sought similar approval last month to convene the After School Satan Club ("ASSC" or "the Club") at the District's middle school on March 8, 2023, April 12, 2023, and May 10, 2023. The ASSC is open to all youth, ages 5-12, and provides fellowship opportunities and a variety of activities that are inspired by TST's core religious tenets, which include benevolence, empathy, critical thinking, problem solving, creative expression, personal sovereignty, and compassion.

Although SVSD officials initially approved TST's application—correctly explaining in a Facebook post and an email to parents that, "[b]y law, the District cannot discriminate among groups wishing to use the SVSD facilities"—they quickly bowed to the ensuing public outcry, which included a threat of violence later traced to a man in North Carolina. The District rescinded its approval of TST's application and prohibited the ASSC from meeting at SVSD facilities on the previously approved dates.

The reason cited by the District for this decision—that the disclaimer of District sponsorship on the ASSC's permission slip was too small and somehow caused the public uproar and threat—is pure pretext. Numerous organizations that use SVSD facilities, including the Good News Club, have not included any disclaimer at all, in any size, on their permission slips and other promotional materials. The District is well aware of these failures to comply with District policy because school officials have repeatedly shared the materials on social media and even sent them home in students' backpacks. If there were any doubt that the District's excuse is pretextual, on March 30, 2023, in response to an inquiry by TST's counsel, the District notified TST that it would not reinstate the ASSC's access to SVSD facilities *even if* TST's ASSC materials include whatever precise disclaimer language in whatever size the District mandates.

The District's decision sets a dangerous precedent. The First Amendment protects everyone, even those whose viewpoints or beliefs are not shared by a majority. The District may no more deny the ASSC access to its facilities than it could eject an after-school Muslim or Jewish club, or the Good News Club, from District facilities due to threats from those who dislike the religious viewpoints of people who follow those faiths. The ASSC has already missed its planned March meeting. Without immediate injunctive relief from this Court, it will also miss its meeting scheduled for April 12, 2023. Thus, TST respectfully asks this Court to restore its First Amendment rights by enjoining the District from denying TST and the ASSC access to SVSD facilities.

## FACTUAL BACKGROUND

The District has opened up school facilities for broad, third-party use, including for civic, cultural, educational, and recreational activities pursuant to Policy 707. (Ver. Compl. ¶ 32.)[1] Both

---

[1] Policy 707 ("Use of School Facilities") is attached to the Verified Complaint as Exhibit 1.

non-profit and commercial groups are permitted to use these facilities. (*Id*. ¶ 33.)[2] Individuals, organizations, and businesses that have held events on District property include the Good News Club, privately operated sports camps, childcare services, youth sports associations, the Scouts, Girls on the Run, the Lion's Club, and others. (*Id*. ¶ 34.)

TST submitted an application on February 1, 2023, to hold monthly ASSC meetings at the Saucon Valley Middle School. (*Id*. ¶ 35.) The District approved the application two weeks later, on February 16, 2023. (*Id.* ¶ 37.) Aware that the District had previously sent home permission slips in students' backpacks for the Good News Club, TST—expecting equal treatment —prepared similar materials for parents. (*Id*. ¶ 39.) These materials included a permission slip and an introductory letter. (*Id*.) Above the parent/guardian signature line, the permission slip stated, "This is not an activity of the school or the School District." (*Id.* ¶ 57.)[3] The introductory letter also stated, in bold, that the "After School Satan Club is not an activity of the School or the School District." (*Id.*)

However, TST never had the opportunity to send these materials home to parents. (*Id.*) Although the District had previously distributed permission slips and flyers from non-school organizations, including the Good News Club and Girls on the Run, it refused to do the same for the ASSC. (*Id.* ¶¶ 39, 42, 107.) Superintendent Jaime Vlasaty told TST that "no flyers, etc. [for non-affiliated organizations] can be provided to students/families." (*Id.* ¶ 42.)

On February 20, 2023, Superintendent Vlasaty emailed parents district-wide to inform them that the District had approved TST's request to use school facilities. (*Id.* ¶¶ 44-47.)[4] The

---

[2] The District's "Rules and Regulations for the Use of School Buildings, Facilities, and Equipment" is attached to this brief as Exhibit A, TST000001-07.

[3] The ASSC permission slip is attached to the Verified Complaint as Exhibit 2.

[4] Vlasaty's February 20th email to parents is attached to the Verified Complaint as Exhibit 3.

email stated, in part, that "[b]y law, the District cannot discriminate among groups wishing to use the SVSD facilities" and further noted that "the District does not endorse any of the groups or content affiliated with groups that host after school events on District property." (*Id.* ¶ 46.) The District also posted the text of Vlasaty's communication to parents on its official Facebook page, although it has since deleted that post. (*Id.* ¶ 48.) Despite the District's approval and Vlasaty's email, School Board President Susan Baxter told one media outlet "she [was] 'not convinced' the club would be using the middle school space and said the district [was] 'still reviewing the situation.'" (*Id.* ¶ 49.)

One day later, on February 21, 2023, the District received complaints about its decision to approve the ASSC's use of school facilities as well as a voicemail message referencing that decision and threatening violence against the middle school. (*Id.* ¶¶ 50-52.) All District schools were closed from the evening of February 21, 2023, through the following day. (*Id.* ¶ 53.) On February 22, 2023, Superintendent Vlasaty again sent a district-wide email to parents, announcing that "[d]ue to this disruption and threat to the safety and welfare of our students and staff, I will be recommending a full review of the Satan Club's use of our facility." (*Id.* ¶ 54.)[5]

Two days later, the District rescinded its approval of TST's application and prohibited the ASSC from holding the previously scheduled meetings at SVSD facilities. (*Id.* ¶¶ 55-61.) In a letter to TST,[6] Superintendent Vlasaty blamed the uproar, threat, and ensuing disruption not on those objecting to the ASSC or the individual threatening violence against the District, but on an allegedly "misleading" advertisement for the ASSC. (*Id.* ¶ 61.) Specifically, Vlasaty stated that an advertisement "shared on social media for the Club on February 20, 2023[,] . . . did not comply

---

[5] Vlasaty's February 22nd email to parents is attached to the Verified Complaint as Exhibit 4.

[6] Vlasaty's February 24th letter to TST is attached to the Verified Complaint as Exhibit 5.

with Board Policy 707," which requires that non-school users of District facilities "clearly communicate that the activities are not being sponsored by the school district." (*Id*. ¶ 56). Vlasaty's letter did not attach the advertisement or social media post but appeared to reference an ASSC permission slip circulated online. Although she acknowledged that the permission slip included the statement "[t]his is not an activity of the school or the School District," Vlasaty claimed "this statement was nearly illegible due to the miniscule size of its font." (*Id.* ¶ 57.) She further contended that "other parts of the flyer and the advertisement on the flyer . . . strongly suggested that the Club was in fact being sponsored by the District," but she did not provide any further details. (*Id.*)

According to Vlasaty, because the February 20th advertisement "caused a substantial disruption to the District's operations, interfering with the educational programs of our schools," the District's approval for TST's application had been rescinded and the ASSC could "not convene at Saucon Middle School or any other District facility" on any of the previously approved dates. (*Id.* ¶ 61.) In reaching this conclusion, the District never contacted TST to determine whether it had authorized any posts on February 20th or to gather any other information from TST as part of its "full review of the Satan Club's use of our facility." (*Id.* ¶ 59.)

In fact, TST did not post anything on social media on February 20, 2023, regarding the Saucon Valley ASSC. (*Id.* ¶¶ 58, 65-66.) TST is aware of only one social media post made before February 21, 2023, by TST or TST staff regarding the ASSC. (*Id.* ¶ 67.) That post was made on February 18, 2023, by the ASSC Campaign Director and included the ASSC permission slip— alongside flyers/permission slips for two other ASSCs—on her personal Facebook page. (*Id.*) All the forms included the statement that "[t]his is not an activity of the school or the School District" and other explicit indications that the ASSC is sponsored by TST alone. (*Id.* ¶¶ 68-72.)

The size of the disclaimer on the ASSC permission slip was approximately the same size as the non-discrimination disclaimer on the District's own official letterhead, (*id.* ¶ 75), although nothing in Board Policy 707 or its accompanying rules and regulations mandates that organizations use particular language or a particular size font to disclaim association with the District. (*Id.* ¶¶ 73-75.) And the District never conveyed such a requirement to TST prior to rescinding approval for the ASSC's meetings. (*Id.* ¶ 73.) Nor did the District allow TST a chance to cure the allegedly deficient disclaimer on the ASSC permission slip. (*Id.* ¶¶ 87-89, 98.) When TST asked the District whether it would permit the ASSC to hold the previously approved meetings if TST altered its disclaimer, using any language and font size that would be acceptable to the District, the District said no. (*Id.* ¶¶ 87-89.)

The District has not enforced Policy 707 equally against all non-school organizations that use District facilities. (*Id.* ¶ 90.) Other organizations have frequently and repeatedly circulated promotional materials for events held at District schools without any explicit disclaimer "that the activities are not being sponsored by the school district." (*Id.* ¶ 92.) The District knows that these groups have not complied with Policy 707 because the District often distributes the non-conforming materials via social media or sends them home in students' backpacks. (Id. ¶¶ 105-128) (detailing District officials' promotion of flyers and advertisements for events held at District facilities by Girls on the Run, the Scouts, a private sports camp, the Saucon Valley Youth Sports Association, Saucon Valley Youth Basketball, and the Lion's Club).[7]

---

[7] Attached as Exhibit B, TST000008-15, (Girls on the Run), Exhibit C, TST000016-17, (Scouts), Exhibit D, TST000018-21, (Joetta Sports and Beyond Camp), Exhibit E, TST000022 (Saucon Valley Youth Sports Association), and Exhibit F, TST000023-27, (Saucon Valley Youth Basketball) are Facebook posts from the District's elementary, middle, and high school Facebook pages in which officials shared flyers promoting events held by these groups at District facilities even though the flyers did not include any disclaimer of District sponsorship. Exhibit G,

For example, the District continues to allow the Good News Club to hold weekly after-school meetings—and indeed has previously promoted the meetings by sending permission slips home with students—even though, until this month, the group's permission slip did not explicitly disclaim sponsorship by the District. (*Id.* ¶¶ 92-104.)[8] And the club's sponsoring church has repeatedly promoted meetings at Saucon Valley Middle School without disassociating the club from the District.[9]

On March 17, 2023, counsel for Plaintiff emailed the District's solicitor inquiring whether SVSD officials would allow the ASSC to use school facilities for future meetings if TST included a disclaimer on its materials that was acceptable to the District. (*Id.* ¶ 88.) On March 30, 2023, the solicitor responded that the District would not allow the ASSC to meet during this school year. (*Id.* ¶ 90.)

## ARGUMENT

The ASSC has already missed its March 2023 meeting due to the District's unconstitutional conduct. Without immediate injunctive relief from this Court, the Club will also be prohibited by the District from holding its previously scheduled meeting on April 12, 2023. As the school year winds down, the Club's opportunity to hold makeup meetings and build fellowship and community among interested students and family will continue to dwindle. Preliminary injunctive relief is

---

TST000028-33 includes Facebook posts and an advertisement for events hosted by the Lion's Club at District facilities.

[8] The Good News Club's 2022 permission slip, which the District sent home with students, is attached to the Verified Complaint as Exhibit 7. The 2023 permission slip, which had no disclaimer and was posted on the website of the club's sponsoring church as recently as February 27, 2023, is attached to the Verified Complaint as Exhibit 8.

[9] Three Facebook posts made by the Good News Club's sponsoring church during the same week that the District rescinded approval of TST's application are attached to this motion as Exhibit H, TST000034-36. In addition, screenshots of the church's website promoting the club are attached to the Complaint as Exhibit 9. None of these promotions feature a disclaimer.

necessary to stop the ongoing violation of TST's First Amendment rights and to ensure that the ASSC can hold its scheduled meetings before the school year ends.

TST meets the standard for issuance of a temporary restraining order and a preliminary injunction. *See B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (en banc) (discussing four factors in preliminary-injunction analysis); *see also Fres-co Sys. USA, Inc. v. Hawkins*, NO. 16-42462016 WL 9306081, at *1 n.1 (E.D. Pa. Aug. 26, 2016) ("The standard for issuing a temporary restraining order is the same as that for ordering a preliminary injunction."). First, TST has a reasonable probability of success on the merits because the District impermissibly based its decision to cancel the Club's meetings on hostility to TST's viewpoint. Second, TST will be irreparably harmed by a denial of injunctive relief because it will continue to suffer serious violations of its First Amendment rights. Third, granting the injunction will not cause the District greater harm than the harm associated with the District's infringement of TST's constitutional rights. And finally, granting injunctive relief to TST is in the public interest because it will restore and protect TST's First Amendment interests and ensure that the dangerous censorship precedent set by District does not continue unabated. Accordingly, the Court should grant TST's motion for a temporary restraining order and/or preliminary injunction in this case.

## I. <u>Plaintiff Is Likely to Succeed on the Merits of Its Free Speech Claim</u>.[10]

The District has established a designated public forum for after-school events and activities. *See infra* pp. 17-19. Nothing required the District to open up any type of forum. But once it did, it was bound by the First Amendment rules governing expressive forums. "In a traditional public forum . . . restrictions based on content must satisfy strict scrutiny, *and those*

---

[10] To facilitate expedited proceedings, TST's motion is based only on its free-speech claim under the U.S. Constitution.

*based on viewpoint are prohibited*. . . . The same standards apply in designated public forums—spaces that have not traditionally been regarded as a public forum but which the government has intentionally opened up for that purpose." *See Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (internal citation and quotation marks omitted) (emphasis added). Indeed, the prohibition on viewpoint discrimination would apply just as forcefully if the District had created a nonpublic forum. *Pittsburgh League of Young Voters Educ. Fund ("PLYV") v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 296-97 (3d Cir. 2011) ("Viewpoint discrimination is anathema to free expression and is impermissible in both public and nonpublic for[ums]").

The District's decision to rescind its approval of TST's application and prohibit the ASSC from meeting at SVSD facilities is plainly based on TST's viewpoint, including the public's negative reaction to that viewpoint. No further analysis is necessary under this preliminary-injunction factor because a "Court's finding of viewpoint bias end[s] the matter." *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022) ("'Restrictions based on . . . viewpoint are prohibited,' seemingly as a per se matter.") (quoting *Mansky*, 138 S. Ct. at 1885).

Even if the District's decision does not discriminate based on viewpoint, however, it would nevertheless be an unconstitutional content-based restriction because it is based on objectors' reactions to the to the subject matter of TST's speech and is not narrowly tailored to, or the least restrictive means of, achieving a compelling governmental interest. *See Mansky*, 138 S. Ct. at 1885; *see also Nat'l Ass'n for the Advancement of Colored People ("NAACP") v. City of Philadelphia*, 834 F.3d 435, 441 (3d Cir. 2016).

**A.** **The District's decision to rescind approval of TST's application and prohibit the ASSC from using school facilities is impermissibly based on TST's "controversial" viewpoint and objectors' reactions to that viewpoint.**

Viewpoint-based regulation is always "impermissible in any forum." *See Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 436 (3d Cir. 2019); *see also Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 149 (3d Cir. 2022) ("Because regulation of particular views is especially offensive to the First Amendment, viewpoint discrimination is generally not permitted under any circumstances."). As the Third Circuit has explained, because "[v]iewpoint discrimination is anathema to free expression . . . if the government allows speech on a certain subject, it must accept all viewpoints on the subject . . . even those that it disfavors or that are unpopular." *PLYV*, 653 F.3d at 296 (internal citations omitted).

Although the District claims it withdrew access to its forum based on TST's failure to comply with Policy 707, the context surrounding the decision demonstrates that the District's justification is nothing more than a pretext intended to mask the fact that the District prohibited TST and the ASSC from using school facilities because of their controversial viewpoint and objectors' reaction to that viewpoint.

> 1. *The District's rationale for prohibiting the ASSC from meeting at the middle school is a pretext for viewpoint discrimination.*

"[T]he recitation of a nondiscriminatory rationale" for suppressing certain speech "is not sufficient standing alone because it could be a cover-up for unlawful discrimination." *PLYV*, 653 F.3d at 297. The sequence of events here, combined with the District's discriminatory enforcement of Policy 707's disclaimer rule, demonstrate that the District resorted to pretext in an effort to circumvent the First Amendment's fundamental prohibition on viewpoint discrimination.

On the evening of February 20, 2023, Superintendent Vlasaty posted a message on Facebook and sent an email to all District parents, announcing that the District had approved the

10

ASSC but had only done so because "[b]y law, the District cannot discriminate among groups wishing to use the SVSD facilities." (Ver. Compl. ¶ 46.) An uproar ensued the following day, and on the afternoon of February 21, 2023, the District received a voicemail threatening violence against the middle. (*Id.* ¶¶ 50-52.) One day later, on February 22, 2023, with schools closed for investigation of the threat, Vlasaty sent another email to parents, highlighting the threat and promising a "a full review of the Satan Club's use of our facility." (*Id.* ¶¶ 53-54.)

And just two days after that, the District had found its excuse to rescind approval of TST's application: In a letter to TST, dated February 24, 2023, the District contended that TST's "advertisements shared on social media for the Club on February 20, 2023" violated Policy 707's requirement that advertisements for activities at school facilities shall "clearly communicate that the activities are not being sponsored by the school district." (*Id.* ¶¶ 55-56.) In short, the District claimed that an explicit disclaimer of school sponsorship on the ASSC permission slip was too small and that this failure of font size had caused a "substantial disruption"—specifically, the February 21st "threat apparently based on the District's approval of the Club using District facilities," which resulted in the school closures on February 22, 2023. (*Id.* ¶¶ 60-62.)

Had the District bothered to contact TST as part of its "full review" of TST's application, it would have known that TST did not post or authorize any posts on social media regarding the ASSC on February 20. (*Id.* ¶¶ 58, 65-66.) In any event, Policy 707 does not require any particular size font, and the explicit disclaimer on TST's permission slip was virtually identical in size to the non-discrimination disclaimer at the bottom of the District's own letterhead, on which it sent Vlasaty's rescission letter. (*Id.* ¶¶ 73-75.) Further, in addition to the express disclaimer that "[t]his is not an activity of the school or the School District," the permission slip created by TST for the

ASSC at Saucon Valley Middle School included other clear indicators that the ASSC is sponsored by TST alone. (*Id.* ¶¶ 68-72.)

Finally, if there were any remaining question about the ASSC's sponsorship, the District's own February 20, 2023, statement posted on its Facebook page, emailed to parents, and disseminated widely by the media thereafter, expressly disclaimed any association between the District and the ASSC, explaining that the District had only approved ASSC's application because it had a legal duty to allow the ASSC to use school facilities and that students would be required to have their parents' permission to attend meetings. (*Id.* ¶¶ 45-49.) Thus, even if the District's concern about disassociation were genuine, given the District's own messaging and the widespread media coverage, no reasonable person could possibly mistake the ASSC for a District-sponsored group going forward.[11]

Tellingly, the District has permitted ongoing access to the forum by a number of groups whose advertising materials have included *no disclaimer whatsoever*. For example, even though the permission slip circulated by the Good News Club had *no* language disclaiming association with the District, officials have allowed the club to hold its meetings immediately after school in the same middle-school space that TST requested for ASSC meetings. (*Id.* ¶¶ 92-97.) Indeed, the District has even sent home the Good News Club's permission slip—sans disclaimer—in students' backpacks. (*Id.* ¶ 93.)[12] In addition, the same week the District rescinded approval of TST's application, the church sponsoring the Good News Club posted multiple advertisements for the

---

[11] *See Good News Club*, 533 U.S. at 115 (no argument "could be reasonably advanced" that parents would be confused into thinking a school district was endorsing religion by allowing the Good New Club to meet after-school in district facilities, where children could attend only with parental permission).

[12] Only after the District ejected TST and the ASSC from its forum did the Good News Club finally add a disclaimer to its permission slip. (Ver. Compl. ¶¶ 96-97.) The District has not provided TST the same the opportunity to amend its permission slip. (*Id.* ¶¶ 88, 90, 98.)

club on Facebook; none had any language disassociating the religious club from the District. *See* Exs. H, I, J. Even this week, as of the filing of the Complaint, the landing/front page of the church's website has promoted Good News Club meetings at the Saucon Valley Middle School with no disclaimer that the club is not a District activity. (*Id.* ¶ 103.) Other examples abound of the District permitting groups to use District facilities—and even promoting those groups' non-school activities—despite the lack of a disclaimer on materials advertising their meetings and events. (*Id.* ¶¶ 105-128; *see also* Exs. B-G.)

Inconsistent treatment of similarly situated speakers "strongly suggest[s] viewpoint discrimination." *PLYV*, 653 F.3d at 297-98. Indeed, "where the government states that it rejects something because of a certain characteristic, but other things possessing the same characteristic are accepted, this sort of underinclusiveness raises a suspicion that the stated neutral ground for action is meant to shield an impermissible motive." *Id.* at 297 (internal quotation marks omitted). Thus, in *PLYV*, a public transit authority refused a bus advertisement about ex-prisoner voting rights, citing a policy that prohibited "noncommercial ads." 653 F.3d at 293. But the transit authority had previously accepted several noncommercial ads, including ads designed to educate readers about their legal rights. The court held that the transit authority's rejection of an ad that "was materially indistinguishable from" previously accepted ads "amply establishe[d] viewpoint discrimination." *Id.* at 299.[13]

---

[13] Likewise, the District's prior lack of enforcement of its disclaimer rule demonstrates that enforcement against TST, even if TST's permission slip had violated the rule, is a pretext for viewpoint discrimination. *See PLYV,* 653 F.3d at 293*; see also Robb v. Hungerbeeler*, 370 F.3d 735, 744 (8th Cir. 2004) (where KKK "was the only group that [state's cited regulation] has ever been used to exclude, [it] strongly suggests that it has been used as a pretext to target the Klan group in a viewpoint-discriminatory manner").

The ASSC is similarly situated with the Good News Club. Both are religious groups that want to hold after-school activities featuring games and other activities inspired by the groups' religious values and intended to promote fellowship among students. (Ver. Compl. ¶¶ 27-28, 129.) The "high degree of similarity" between the Good News Club and the ASSC, and the District's discriminatory treatment of the latter, provide strong evidence of pretext and viewpoint discrimination. *See PLYV*, 653 F.3d at 296, 298.

   2.   *The District's suppression of TST's speech based on others' reactions to that speech constitutes viewpoint discrimination.*

The District tied its decision to rescind approval of TST's application to its disclaimer pretext because it knew that it could not otherwise ban the ASSC from school facilities. (Ver. Compl. ¶ 46) ("By law, the District cannot discriminate among groups wishing to use the SVSD facilities."). It is no coincidence that the District prohibited the ASSC from meeting at the middle school only days after news of the initial approval for the Club sparked a local uproar and a threat against the District. Objectors plainly took issue with the viewpoint espoused by the ASSC and TST. (*Id.* ¶ 82.) The North Carolina man arrested for threatening the District told police that "the After School Satan Club is trying to turn kids into devils." (*Id*. ¶ 76.) The Superintendent revealed that she had "received hundreds of emails, voicemails, phone calls from community members frustrated by my decision to approve the club, angered that [she] placed the students in danger" and that some messages stated that she "should not be around children," is "woke," and is a Satan worshipper. (*Id.* ¶ 82.) And the School Board vice president essentially accused TST of treating the community as a "pawn" to make particular points. (*Id*. ¶ 131.)  The District cited this uproar and threat in its February 24, 2023, recission letter to TST and in the District's communications to parents and the community. (*Id*. ¶¶ 60-62.)

14

There is no question that the ASSC's and TST's viewpoints are controversial and divisive to some people, especially those who may be unfamiliar with the actual tenets of the religion. But "[t]o exclude a group simply because it is controversial or divisive is viewpoint discrimination." *Child Evangelism Fellowship of New Jersey Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 527-28 (3d Cir. 2004) ("Even in the school setting, a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint is not enough to justify the suppression of speech."); *accord Christ's Bride Ministries, Inc. v. Se. Pa. Transp. Auth.*, 148 F.3d 242, 255 (3d Cir. 1998) ("Thus the government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views.") (internal quotation marks omitted). The Supreme Court has ruled "time and again that the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Matal v. Tam*, 582 U.S. 218, 244 (2017) (internal quotation marks omitted). It follows that the "[g]overnment may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction of the speaker's audience." *Id.* at 250 (Kennedy, J., concurring); *see also Marshall v. Amuso*, 571 F. Supp. 3d 412, 422 (E.D. Pa. 2021) (explaining that prohibiting speech because it "disparages or offends" others is "impermissible viewpoint discrimination").

That holds true even if listeners' reactions go beyond mere offense and venture into threats of violence or actual violence. Such a heckler's veto would be a "type of odious viewpoint discrimination." *See Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 248 (6th Cir. 2015); *see also Sons of Confederate Veterans, Inc. v. Glendening*, 954 F. Supp. 1099, 1104 (D. Md. 1997) ("A desire to stem listeners' reactions to speech is simply not a viewpoint-neutral basis for

regulation.").[14] For example, in *Robb*, 370 F.3d at 743 (8th Cir. 2004), the Eighth Circuit held that excluding a KKK group from a government "Adopt a Highway" program to prevent potentially violent reactions by those who would see a roadside sign denoting the group's sponsorship constituted viewpoint discrimination. The Court explained: "The State also may not censor [the] applicants' speech because of the potential responses of its recipients. The first amendment knows no heckler's veto, and the State's desire to exclude controversial organizations in order to prevent 'road rage' or public backlash on the highways against the adopters' unpopular beliefs is simply not a legitimate governmental interest that would support the enactment of speech-abridging regulations." *Id.* (internal quotation marks omitted).

TST is not responsible for criminal acts or any other response to its speech. The person who made the specific threat against the District has been arrested, and District schools have resumed their regular operations. (Ver. Compl. ¶ 76.) The District's own messages and the extensive media coverage have made crystal clear that the ASSC is not sponsored by the District. To further address the District's purported concerns, TST even asked whether the District would reinstate the ASSC's access to school facilities if TST adopted a new disclaimer, the text and size of which could be dictated by the District (*Id*. ¶ 88.) The District refused. (*Id*. ¶ 89.) That's because the District never truly cared about the disclaimer on the ASSC permission slip. Even if

---

[14] In *Glendening*, the Maryland Motor Vehicle Association ("MVA") approved an application by the Sons of Confederate Veterans ("SOCV") for a specialty license plate featuring an image of the confederate flag. 954 F. Supp. At 1100. But after "a public firestorm" erupted, the MVA rescinded its approval and demanded that SOCV submit a new plate design. *Id* at 1104. The court held that the decision was impermissibly based on viewpoint: "However well-intentioned or politically astute the MVA's revocation decision might have been in the wake of such controversy, [p]ublic intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms." *Id.* (quotation marks and citations omitted). Although the Supreme Court has since ruled that such license-plate programs are government speech, and not a forum, *see generally Walker v. Tex. Div., Sons of Confederate Veterans*, 576 U.S. 200 (2015), the court's reasoning remains persuasive in forum analyses.

TST's disclaimer took up half a page, the ASSC would still be espousing the same unpopular viewpoint as before. And that has been the District's concern all along.

**B. Even If the District's Prohibition on the ASSC's Use of School Facilities Does Not Discriminate Against TST's Viewpoint, It Is an Impermissible Content-Based Restriction.**

    *1. The District has created a designated public forum for after-school meetings and events.*

Whereas restrictions based on viewpoint are always unconstitutional, the permissibility of other government restrictions on speech that occurs on public property generally depends on the nature of the forum in which the speech is delivered. The U.S. Supreme Court and the Third Circuit have recognized three categories of forums: (1) traditional public forums, such as parks and streets, (2) designated public forums, and (3) nonpublic forums. *See Mansky*, 138 S. Ct. at 1885; *see also NAACP*, 834 F.3d at 441; *Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1370-71 (3d Cir. 1990).[15] A designated public forum is public property "intentionally opened by the state for indiscriminate use by the public as a place for expressive activity." *See Gregoire*, 907 F.2d at 1370. Although public schools typically are not considered traditional public forums, SVSD's policy and practices pertaining to use of its facilities demonstrate the creation of a designated public forum. *See id.* at 1369, 1378 (holding that public school district's facility-use policy and practice created designated public forum).[16]

---

[15] Some courts have also referred to "limited public forums." The term has been used inconsistently. The Third Circuit has recently used "limited public forum" interchangeably with "nonpublic forum." *See NAACP*, 834 F.3d at 441 & n.2; *Porter v. City of Philadelphia*, 975 F.3d 374, 387 n.75 (3d Cir. 2020). In the past, however, the court has used "limited public forum" to describe a type of "designated public forum." *See Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1259 (3d Cir. 1992).

[16] The *Gregoire* Court sometimes refers to this as a "designated open public forum" or a "designated open forum." 907 F.2d at 1370.

First, Policy 707 evinces the District's clear intent to open school facilities for a wide array of expressive activities by a variety of speakers. *See id.* at 1371. The policy makes school facilities available "to organizations, associations and individuals of the community for civic, cultural, educational and recreational activities[.]" (Ver. Compl., Ex. 1 § 2.) Facilities may be used for both commercial and non-profit purposes, and applicants may be located within or outside of the school district's boundaries. (Ex. A § A.) The District's property is plainly compatible with these broadly authorized expressive activities: District policy allows for the use of school classrooms and large group instruction rooms, auditoriums, gymnasiums, cafeteria kitchens and dining areas, game fields, playgrounds, the football stadium, and the District's indoor swimming pool. (*Id.* § F.)

Second, the District has allowed a broad range of speakers to use its facilities after school for virtually unlimited expressive purposes: to conduct commercial and non-profit civic, cultural, educational, and recreational activities. *See Gregoire*, 907 F.2d at 1374-75.[17]

Finally, by policy and practice, approval of applications to use District facilities has essentially been ministerial or pro forma,[18] subject only to availability of the requested facility vis-

---

[17] The only uses that are excluded are those involving the use of tobacco, illegal drugs, alcohol, or weapons; conduct that would damage District property or equipment or violate the law; or gambling and other activities requiring a license for games of chance. (Ver. Compl. Ex. 1 § 4); *see also Gregoire*, 907 F.2d at 1375 ("School facilities . . . subject only to the limitations of hours, administrative requirements of filing an application and paying the fees and costs, and conforming to the general standards regarding use that would not cause injury or damage to persons or property, though definitionally 'limited,' are for all intents and purposes a public forum from the vantage point of the protection of first amendment rights of free speech[.]") (quoting district court's opinion).

[18] Non-public fora are defined by a key feature: They permit only "selective access . . . with permission 'contingent upon non-ministerial judgments.'" *See Child Evangelism Fellowship of S.C. ("CEFSC") v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006) (internal citation and quotation marks omitted). Thus, courts examine whether, pursuant to its policy and practice, the government's approval for use of the forum is based on identifiable, *selective* criteria analyzed for each application or is merely ministerial—*i.e.,* a matter of course with limited discretion. *See Gregoire*, 907 F.2d at 1371. The latter suggests a designated public forum, as here. *Id.*; *cf. CEFSC*, 470 F.3d at 1067.

à-vis already scheduled school-related events. (*See* Ver. Compl. Ex. 1 ("It is the policy of the Board of Directors of the Saucon Valley School District to make available the facilities of the school district . . . when the scheduling of these activities does not interfere with the educational program of the district."); *see also id.* ¶¶ 90-128 (listing various events held at District schools)).

2. *The District's prohibition on the ASSC's use of school facilities constitutes impermissible content-based discrimination*

Even if the District's decision does not discriminate based on viewpoint, it would nevertheless constitute an unconstitutional content-based restriction because it does not satisfy strict scrutiny. *See Mansky*, 138 S. Ct. at 1885 (strict scrutiny applies in designated public forums). "Under strict scrutiny, a content-based restriction is presumptively unconstitutional, . . . and may be justified only if the Government shows that the restriction (1) serves a compelling governmental interest; (2) is narrowly tailored to achieve that interest; and (3) is the least restrictive means of advancing that interest." *Free Speech Coalition, Inc. v. Att'y Gen. United States*, 974 F.3d 408, 420 (3d Cir. 2020) (internal citation and quotation marks omitted).

The District's prohibition on the ASSC's use of school facilities is based on the hostile reaction of some members of the public to TST's speech and the District's fear of continued backlash and disruption due to that hostility. The prohibition, therefore, is not content-neutral, even if based on a desire to prevent violence. *See, e.g.*, *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."); *United States v. Marcavage*, 609 F.3d 264, 282 (3d Cir. 2010) ("[W]here the government regulates speech based on its perception that the speech will spark fear among or disturb its audience, such regulation is by definition based on the speech's content."). For example, in *Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. D.C.*, 972 F.2d 365, 367 (D.C. Cir. 1992), the threat of a violent counter-demonstration against a KKK march prompted the police department to limit the

march's route. The department repeatedly pointed to "the prevention of violence" as a content-neutral basis for its decision, but the Court of Appeals disagreed, explaining:

> The risk of one faction using government to silence another, and so stifling debate to the detriment of society at large, is not reduced when some of those citizens decide to make their wishes known with bricks instead of ballots. When government responds to wishes violently expressed, the level of constitutional scrutiny is no lower than when it responds to ones peacefully expressed.

*Id.* at 374. Because the restriction rested "on the threat of listeners' violent reaction to the message being delivered, [it] was content based." *Id.*

a.      The District's interests are not compelling.

The District asserts an interest in enforcing Policy 707's disclaimer rule to ensure that events hosted at District facilities by non-school organizations are not mistaken for District-sponsored activities. But that interest cannot be compelling here in light of the District's repeated failure to enforce the disclaimer policy against myriad other organizations. The District's selective enforcement of the disclaimer policy leaves unprohibited "appreciable damage to . . . [its] supposedly vital interest" and thus "cannot be regarded as protecting an interest of the highest order." *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (internal quotation marks omitted); *cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) (system of exemptions from city policy undermined city's asserted compelling interest).

Even if enforcing the disclaimer policy to avoid the impression of District sponsorship were an interest of the highest order, generalized assertions of compelling interest are inadequate. The Supreme Court has recognized it is not enough merely to identify a compelling interest without showing that the challenged policy "*actually furthers*" that interest. *See Holt*, 574 U.S. at 364 (emphasis added); *see also Singh v. McHugh*, 185 F. Supp. 3d 201, 223 (D.D.C. 2016) ("[T]he Court must determine whether defendants have proven that the decision . . . actually furthers the

compelling interests defendants have identified."). The District cannot meet that burden here. Its decision to rescind approval of TST's application and prohibit the ASSC from using school facilities does not *actually further* any compelling interest in enforcing the disclaimer policy because the District's reliance on that policy has been a pretext from the start. *See supra* pp. 10-14. Plus, there is no question that the public is, at this point, well aware that the ASSC is not sponsored by the District.

The District also has no compelling interest in banning the ASSC from school facilities to quell potential unrest and disruption by those who object to TST's religion and speech. To be sure, avoiding unrest and disruption of the school day may, in the abstract, constitute a compelling interest. But here, under these specific circumstances, the government's interest in quelling any unrest and disruption rests on its satisfaction of the private prejudices that some members of the public hold against TST. Catering to such "private biases" is not even a legitimate interest, let alone a compelling one. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 448 (1985) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.") (internal quotation marks omitted); *see also Doe 1 v. Trump*, 275 F. Supp. 3d 167, 212 n.10 (D.D.C. 2017) ("To the extent this [the government's asserted interest] is a thinly-veiled reference to an assumption that other service members are biased against transgender people, this would not be a legitimate rationale for the challenged policy."), *vacated on other grounds sub nom. Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019); *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 840 F.2d 293, 302 (5th Cir. 1988) (holding that neighborhood opposition to permit for Islamic Center was not a rational basis for denying zoning permit, especially where denial meant different treatment "between familiar and unfamiliar religions").

b.    The District's prohibition on the ASSC's use of school facilities is not narrowly tailored to, or the least restrictive means of, furthering a compelling interest.

In denying TST and the ASSC access to school facilities, the District has effectively imposed a categorical ban on TST's speech in the District's designated public forum through the remainder of the school year and likely longer. Such blanket prohibitions are not narrowly tailored to, or the least restrictive means of furthering, a governmental interest. *See, e.g.*, *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014) ("[A] categorical ban on speech is not tailored at all, as it entirely forecloses a means of communication."). In fact, courts have held that outright bans on speakers do not even meet the *lower* reasonableness standard that applies in *nonpublic* forums. *See, e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 92–93 (2d Cir. 2005) (broad restrictions "singling out of [the plaintiff] for exclusion [from nonpublic forum], thereby permitting all others to engage in similar activity" was not reasonable); *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015) (holding that "imposing a complete bar" on individual's entry to the state capital building, a limited public forum, "clearly exceed[ed] the bounds of reasonableness . . . as a response to a single act of disruption" by the individual); *Crowder v. Hous. Auth.*, 990 F.2d 586, 591–92 (11th Cir. 1993) (complete ban on public-housing resident's Bible study gatherings to ensure that nonresidents did not to enter the building before 8:30 a.m. was not narrowly tailored to meet stated security concern); *Cyr*, 60 F. Supp. 3d at 548 (school district's ban of parent from all premises owned by the school for two years "ostensibly in order to protect school staff" from threat of potential violence was not narrowly tailored).

The District's interest in enforcing its disclaimer policy could easily be achieved by actions that fall far short of outright prohibiting TST and the ASSC from using school facilities on the previously approved dates. First, the District could simply require TST to update its permission slip and other materials with a larger disclaimer. The District could even dictate that disclaimers

use specific language printed in a particular size font. This option appears to have been sufficient to allow the Good News Club to continue meeting at the middle school. Yet, the District refuses to provide TST the same opportunity.

Second, the District has specific protocols in place for dealing with threats and disruption. (Ver. Compl. ¶¶ 134-37.) Among other tools, the protocols include notifying police of the threat, working with authorities to identify the suspect, and temporarily increasing the presence of police and private security on campus. (*Id*. ¶ 136.) The District has repeatedly and successfully employed these protocols in recent years to deal with serious security threats, including the phone threat on February 21, 2023. (*Id*. ¶¶ 137-41.) There is no reason that school officials cannot continue to follow these policies and practices if another threat or other disruption occurs. *See, e.g.*, *Cyr*, 60 F. Supp. 3d at 549 (holding that school district could, as a less restrictive alternative to banning parent from campus, station a police officer at public meetings held on school grounds). What the District may not do is completely prohibit TST and the ASSC from using school facilities based on the misconduct and outrage of others, making no effort to try other, less restrictive measures that may exist. *See Bible Believers,* 805 F.3d at 255 (noting that police should have protected controversial speaker and tried to "contain the lawlessness of the hecklers in the crowd" rather than removing the speaker from the forum).

## II.  **The Remaining Preliminary Injunction Factors Weigh in TST's Favor**.

First, TST will be irreparably harmed absent a temporary restraining order or preliminary injunction. The ASSC has already been deprived of its free-speech right to hold its first scheduled meeting in March. Absent preliminary relief, the District will continue to deny TST access to school facilities, in violation of the First Amendment, and the ASSC will miss its meeting scheduled for April 12, 2023. Soon, the school year will be over and TST will lose its opportunity to hold any ASSC meetings this year. "The loss of First Amendment freedoms, for even minimal

periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Am. Civil Liberties Union v. Reno*, 217 F.3d 162, 180 (3d Cir. 2002) (noting that, in First Amendment challenges, plaintiffs who meet the merits prong of the preliminary-injunction test "will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights") (internal citation omitted), *vacated on other grounds sub nom. Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564 (2002). TST plainly meets the irreparable-injury requirement here.

Second, the potential harm to the district is significantly less than the harm from the District's abridgement of TST's constitutional rights. A preliminary injunction will not harm the District because it would merely require the District to apply its existing policy in a non-discriminatory manner, and the government "suffers no legitimate harm from not enforcing an unconstitutional policy." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022). The balance of hardships, therefore, favors granting a preliminary injunction.

Finally, "the public interest does not suffer by enforcing the First Amendment's protection against restrictions on speech." *Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020). "There is a strong public interest in upholding the requirements of the First Amendment. And, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Amalgamated Transit Union*, 39 F.4th at 109 (quotation marks and citations omitted). Here, preliminary relief will not only restore TST's First Amendment rights, but it will bring to a swift end the dangerous precedent set by the District's decision. If allowed to stand, the District's reasoning could be used to exclude any number of unpopular religious or non-religious groups

from expressive forums in which they would otherwise be entitled to participate—merely because enough members of the public, or even just one person, were offended by the group's viewpoint and created a disturbance to shut down the group's speech. *Cf. Mahanoy Area Sch. Dist. v. B. L.*, 141 S. Ct. 2038, 2056 (2021) (Alito, J., concurring) (noting that schools may "suppress the disruption" but "should punish the rioters, not the speaker"). The public interest, therefore, favors granting a temporary restraining order or preliminary injunction.[19]

## CONCLUSION

For the foregoing reasons, Plaintiff The Satanic Temple respectfully requests that this Court grant the requested preliminary injunctive relief.

Respectfully Submitted,                                    Dated: March 31, 2023

Sara J. Rose (PA Bar No. 204936)
Richard T. Ting (PA Bar No. 200438)
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7864
*srose@aclupa.org*
*rting@aclupa.org*

Daniel Mach (D.C. Bar No. 461652)*
Heather L. Weaver (D.C. Bar No. 495582)*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
*dmach@aclu.org*
*hweaver@aclu.org*
*Motion for Pro Hac Vice Admission Pending*

*Counsel for Plaintiff*

*/s/ Will W. Sachse*
Will W. Sachse (PA Bar No. 84097)
Noah Becker (PA Bar No.327752)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2496
*will.sachse@dechert.com*
*noah.becker@dechert.com*

[19] Because this is a non-commercial case that at this preliminary stage involves only non-monetary injunctive relief, and the balance of hardships favors TST, the Federal Rule of Civil Procedure 65(c) security bond requirement should be waived. *See Elliot v. Kiesewetter*, 98 F.3d 47, 59-60 (3d Cir. 1996); *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991).

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March 2023, the foregoing Plaintiff's Brief in Support of Motion for Temporary Restraining Order and/or Preliminary Injunction was file electronically through the Court's CM/ECF system, which will send notice of filings to all CM/ECF participants including on each party.

_/s/ Will W. Sachse_
Will W. Sachse

## RULES AND REGULATIONS

## FOR THE USE OF

## SCHOOL BUILDINGS, FACILITIES, AND EQUIPMENT

### *STATEMENT*

It is the policy of the Board of Directors of the Saucon Valley School District (Policy 707) to make available the facilities of the school district to responsible organizations, associations, and individuals of the community for civic, cultural, educational, and recreational activities, when the scheduling of these activities does not interfere with the educational program of the district.

Representatives of organizations requesting the use of school buildings and facilities are required to satisfy administration that they are responsible persons and officially represent responsible organizations.  They must guarantee orderly behavior and, through the signing of an agreement form, indicate their willingness to abide by the Board's rules and regulations.  The primary responsibility for the proper use of buildings and facilities within these administrative regulations rests upon the individual who signs the agreement form.

The Board of School Directors will be notified monthly of the facilities scheduled use.

*Rev. 2007*

A.    **ELIGIBILITY**

Classifications of Eligible Organizations Using School Facilities:

Classes, groups, or organizations are permitted to use school facilities.
A list of charges by classes of users is included as *Attachment A* to these administrative regulations.  These charges are listed in this manner to facilitate changes as needed from time to time as the cost of salaries and utilities change.

| | | |
|---|---|---|
| **GROUP I** | - | APPROVED SCHOOL DISTRICT ACTIVITIES |
| **GROUP II** | - | NON-PROFIT CIVIC , SERVICE, OR ATHLETIC ORGANIZATIONS WITHIN THE SCHOOL DISTRICT BOUNDARIES. |
| **GROUP III** | - | NON-PROFIT CIVIC, SERVICE, OR ATHLETIC ORGANIZATIONS OUTSIDE THE SCHOOL DISTRICT BOUNDARIES |
| **GROUP IV** | - | INDIVIDUAL/ORGANIZATIONS FOR COMMERCIAL PURPOSES, LOCATED WITHIN THE SCHOOL DISTRICT BOUNDARIES |
| **GROUP V** | - | INDIVIDUAL/ORGANIZATIONS FOR COMMERCIAL PURPOSES, LOCATED OUTSIDE THE SCHOOL DISTRICT BOUNDARIES |

TST000001

B.   **SCHEDULING PROCEDURES**

1.   Scheduling Priorities:

   a.   SCHOOL ACTIVITIES
        School Activities shall always have first priority for all space.
        All applications will be processed according to date of receipt of
        application.

   b.   SCHOOL-RELATED ORGANIZATIONS
        These are organizations that are:
        (1)  primarily servicing Saucon Valley School District residents of school age.
        (2)  primarily in existence to support and/or enhance the programs,
             goals, and mission of the District.

   c.   ORGANIZATIONS IN THE DISTRICT
        Organizations located within the attendance area of the Saucon Valley School District will
        generally have next priority in the use of school facilities.

2.   No Charges Assessed

   a.   SCHOOL ACTIVITIES
        The principal of each school shall provide the Business Office with a list of all regularly
        scheduled after-hour activities for the school year as well as a monthly list of all non-recurrent
        events.

   b.   SCHOOL RELATED ORGANIZATIONS
        Civic, service, or athletic organizations of the Saucon Valley School District requesting use of
        facilities to hold an event that will directly benefit the District, school, or children of the
        District will be charged for only the additional cost of services required to conduct the
        activity, (if any) i.e., any payment to personnel or other expenses to conduct activity.
        *(Board Policy No. 707)*

        The person in charge shall provide the Business Office with a list of all
        scheduled dates at least two weeks in advance of the first meeting.

        Note:  All such activities must have adult supervision.

C.   **APPLICATION PROCEDURE**

   1.   Filing of Application

        Organizations desiring to use school facilities shall file on the prescribed
        school district form (Attachment B) an application with the Business Office
        at least three weeks before the proposed date of activity.  Failure to adhere to this time-line may
        result in the application not being considered.  The application will indicate the time, type, and
        location of the facilities desired, equipment requested, the purpose of the activity, and the
        organization or group requesting such use.  The application must be signed by an appropriate
        official of the organization.

   2.   Responsibility of Person Signing Application

        The person who signs the application is responsible for assuring that all
        rules and regulations of the Saucon Valley School District will be properly implemented.  The
        use of the facilities shall be limited to the specific hours stated on the approved application.
        Custodians or any other school employee will not be responsible to enforce the regulations of
        the School District.  If infractions of the rules and regulations are reported, the use of
        the school facilities will be immediately denied that organization until a satisfactory
        understanding can be reached regarding future use.

3.   Master Calendar

The Business Office will maintain a master calendar indicating the scheduled use of school facilities within the District.  The calendar will include the name of the organization, the building, facility, and equipment which will be used, and the dates and times of usage.  A copy of the approved application will be filed in conjunction with the calendar to provide additional information regarding the use of the facility on any given date.

## D.   GENERAL CONDITIONS

1.   Inclement Weather  -  Groups II, III, IV, and V  will not be permitted to use school facilities when schools are closed due to inclement weather.

2.   Drugs and Alcohol  -  Intoxicating beverages or narcotics are prohibited on all school properties and at all sponsored activities. Any person under the influence of alcohol or narcotics will not be permitted to remain on the school property, and will be referred to local law enforcement agencies.

3.   Smoking/Use of Tobacco Products  -  Smoking and the use of tobacco products is prohibited on all school premises and at all sponsored activities.

4.   Indecent Language  -  Profane, obscene, and indecent language is prohibited at all times.

5.   Area Restriction  -  It is required that the members of the organization using school facilities and spectators when involved in the activity use ONLY the areas for which approval is given.  It is the responsibility of the person signing the application to see that this regulation is carefully followed.

6.   Responsibility for Damage to Facilities  -  The organization assumes full responsibility for any and all damages to buildings, facilities, or equipment resulting from its use thereof.

7.   Custodial Care of Facilities  -  Generally, there must be one or more custodians on duty at all times when school facilities, including the football field, are in use. Buildings and equipment must be left in a clean and orderly fashion.  The custodian is to report any known violations of the rules and regulations regarding use of school facilities to District Administration.

8.   Decorations  -  Decorations or signs by non-school groups are permitted on school building walls only with the approval of the school building principal.  All decorations must be removed from the building by 7:00 AM the following day.

9.   Facilities may not be filled beyond rated capacity.

10.  Sponsors or supervisors of an activity must be present at the start and must remain on the premises until all participants have left the facility.

11.  The building principal, or other administrator responsible for approving applications, may impose such additional reasonable restrictions or conditions as he/she shall determine according to the nature of the proposed use as set forth on the application.

## E.   SPECIAL RULES AND REGULATIONS

1.   Opening of Buildings  -  The building and facility will not be opened until the person responsible for the activity is present.

2.   Spectators

a.   Practices or Rehearsals – parents or guardians of participants and their children are permitted during practices or rehearsals. No other persons are permitted.  All are restricted to areas essential to the function.

TST000003

     b.   Meets or Performances – Adults and children under eighteen accompanied by an adult are permitted at meets or performances.  Children under eighteen will be permitted without being accompanied by an adult ONLY if the organization using the facilities provides adequate supervision.

3.    <u>District Equipment</u>  -  Organizations requesting use of District equipment shall include the specific equipment and details on the application.  Special equipment, such as a scoreboard, kitchen equipment, sound system, and stage lighting, must be operated by District personnel.  The organization will be responsible for any required compensation of District personnel.

4.    <u>Compensation of District Personnel</u> – Organizations using District facilities shall make all payments directly to Saucon Valley School District.  No reimbursement directly to an employee is permitted.  Tips also are not permitted.

5.    <u>Insurance</u> – Each organization using District facilities will be required to furnish a certificate of insurance with minimum coverage providing not less than $1,000,000 limit per occurrence for bodily injury and/or property damage liability.

6.    <u>Cancellations</u>  -  Cancellation of scheduled use of District facilities must be reported to the Business Office at least seven days in advance.  This advance notification is required for notification of custodians or others designated to supervise the use of the facility and to release the facility for use by another group.  If the cancellation is not cleared with the Business Office in time to permit proper notification of school personnel engaged for the activity, the organization will be required to pay all costs involved.

## F.    RULES AND REGULATIONS RELATING TO SPECIFIC FACILITIES

### <u>AUDITORIUM</u>

Requests for use of stage facilities, lighting, and installation of scenery shall be clearly indicated on the application for use of facilities.

Use of the auditorium sound and lighting systems must be requested and coordinated **through the Business Office**.

Note:  A technician will be designated by the district to operate the sound and lighting systems for all functions in the High School Auditorium.

Organizations using the auditorium are responsible for any damage to seating or other equipment.

Equipment, costumes, or clothing belonging to the organization must be removed from the school property by 7:00 AM the following school day.

### <u>GYMNASIUMS</u>

Reservations for gymnasiums can be made for a period no longer than the normal sport season of the proposed activity.  Physical education and athletic equipment desired by the organization must be requested in advance on the application form.

Physical education supplies and/or other school supplies are NOT available to any organization using school facilities.

Street shoes are not permitted on gymnasium floors for athletic-type events.

Seating facilities will be made available for spectators in gymnasiums where permanent bleachers have been provided with advance request of at least 48 hours.


TST000004

## CLASSROOMS

The use of classrooms is permitted. Specific rooms must be requested on the application form.

## CAFETERIA DINING AREA

The cafeteria dining area may be used under the same conditions as a classroom when the kitchen is not part of the agreement.

## CAFETERIA KITCHEN

The cafeteria kitchen may be used for preparing meals for organizations, provided that at least one District kitchen employee must be on duty if the kitchen is used by any organization for preparing foods or meals. Wages will be paid at the prevailing rate. Dishes and utensils or other supplies and equipment are **not** available for use by caterers.

## SWIMMING POOL

All pool regulations must be followed and a minimum of one lifeguard must be on duty when the pool is in use. Coordination with the Saucon Valley Recreational Swim Program will be provided by the Business Office. The organization will be responsible for the cost of the lifeguard, if not under the auspices of the Saucon Valley Recreational Swim Program.

## REST ROOMS

All rest rooms within the leased area shall be accessible to authorized users of facilities and shall remain open and available. Users are responsible for any vandalism that may occur.

## OUTDOOR FACILITIES

*OUTDOOR FACILITIES* can be reserved for a period no longer than the normal sport season of the proposed activity. No equipment other than that required for conducting the sport can be moved on fields without special permission.

*BASEBALL FIELDS* may be used only for baseball and not for sports which require any change in the length or placement of bases, pitcher's mound, etc. The field must be maintained in satisfactory condition. This includes leveling and dragging under the supervision of District personnel, if required. The deliberate throwing of balls into screens during batting practice is prohibited.

*PLAYGROUND FACILITIES* - Adequate supervision for organizations using the playground facilities shall be provided until all children leave the premises.

*FOOTBALL STADIUM* - The stadium may be used for appropriate sports from Monday through Saturday, when available. The field must be properly maintained during the course of the event and any damage to the field will be the responsibility of the organization. NOTE: All eligible civic groups, service organizations, or athletic organizations who use the stadium with waiver of rental fees will be responsible for the payment of District personnel who will open and close the facility and who will clean the premises after the event.

*STADIUM LIGHTS* - The use of the stadium lights will be charged at an hourly rate for the use, based on current PPL rates, unless waived.

## G.  TRAFFIC RESTRICTIONS

1.  <u>Traffic/Parking</u>  -  Organizations using campus facilities are required to provide adequate supervision to assure that automobiles or trucks are not parked on sod areas, play areas, or in restricted areas which could constitute a hazard in case of an emergency.  Organizations using the facilities shall obey and ensure the enforcement of school district traffic and parking policies.

2.  <u>Police Supervision</u> – When the District determines that police supervision or other security is required at any event, the District will inform the requesting user to contract for services and the user will be billed for all costs.  Usually, any event with more than two hundred (200) participants will require Police Supervision.

## H.  FEE SCHEDULE AND HANDLING OF CHARGES PROCEDURE

1.  The *"Fee Schedule for Use of School Buildings, Facilities, and Equipment"* is included with this administrative regulation as Attachment A. A description of the various classes of organizations is found under Section A.I. entitled *"Classifications of Eligible Organizations Using School Facilities"* on Page 1 of the rules and regulations.

2.  Payment is due immediately upon receipt of appropriate billing by the District.  Payment shall be made by check drawn to the order of the *Saucon Valley School District* and sent to:  Saucon Valley School District Business Office, 2097 Polk Valley Road, Hellertown, Pa  18055.

## I.  CLOSING

The Saucon Valley School District hopes your event is a huge success.

We strive to provide you with all the necessary information and assistance in securing the use of our facilities.

Please contact us if you have any questions, concerns, or suggestions.


TST000006

<u>AFFIDAVIT</u>

We certify that we have read and understand the rules and regulations
of the Saucon Valley School District concerning
the use of school buildings, facilities, and equipment,
and further that we forever release the Saucon Valley School District,
their Board of Directors, agents, and employees
from all claims, actions, and charges whatsoever arising out of the event(s)
conducted on the aforementioned date(s) for which this
Application for Use of Facilities is submitted.
That upon prompt notice, we will defend all actions, suits, complaints
or legal proceedings of any kind brought against the
Saucon Valley School District, their Board of Directors, agents, and employees.


Further, we would hold harmless and indemnify the above
from any expenses and judgments or decrees recovered against them
as a result of the said use of these facilities.


_____
*Name of Organization*


_____          _____
*Signature of Responsible Official*                         *Signature of Responsible Official*


_____          _____
*Address*                                                        *Address*


_____                 _____
*Contact Phone Number*                                       *Contact Phone Number*

TST000007

**Saucon Valley Elementary School**
September 7, 2022 · 🌐

Spots are filling up! This is a great program open to girls in 3rd and 4th grade. See registration information below.



**learn. dream. live. run.™**

Give girls the opportunity to connect, grow, and thrive! Girls on the run establishes lifelong healthy habits and instills critical social-emotional skills at a time *when girls need it the most.*

**More than a Running Program**

Unlike other programs, Girls on the Run combines social and emotional learning with physical activities

**What's included:**
- 20 interactive lessons by trained volunteer GOTR coaches
- GOTR program shirt
- GOTR water bottle
- GOTR cinch sak
- Entry into the 5k race
- Finisher's medal
- End of season goodie bag
- Tons of fun and long lasting memories!

**GIRLS ON THE RUN AT SAUCON VALLEY ELEMENTARY**

**Days:** Mon/Wedn **Times:** 3:30pm-5:00pm
**Registration opens:** NOW!
**Who:** Girls 3rd and 4th grade
**First Practice:** Monday 9/19
**5k Date:** Saturday, 12/3 @ DeSales University
*More details to follow.
**Registration fees:** $160.
*Payment plans and scholarships available.
Information for financial assistance is provided when registering online.

Participants of all intersecting social identities, including all races, ethnicities, income levels, sexual orientations, religions and those with and without disabilities may register.

*Questions:* Please contact Jessica Younker Program Director
jessica.younker@girlsontherun.org or 484-431-7564

15 Spots will fill up fast!
First come first served

REGISTER
www.gotrlehighvalley.org

SCAN ME

👍 4

👍 Like          💬 Comment          ➤ Share

TST000008

**Saucon Valley Elementary School**
September 6, 2022 · 🌐

Parents/Guardians of 3rd & 4th grade girls - this is the flyer that was sent home today. Information on how to register is listed below.



# learn. dream. live. *run.*™

Give girls the opportunity to connect, grow, and thrive! Girls on the run establishes lifelong healthy habits and instills critical social-emotional skills at a time *when girls need it the most.*

## More than a Running Program

Unlike other programs, Girls on the Run combines social and emotional learning with physical activities

### What's included:

- 20 interactive lessons by trained volunteer GOTR coaches
- GOTR program shirt
- GOTR water bottle
- GOTR cinch sak
- Entry into the 5k race
- Finisher's medal
- End of season goodie bag
- Tons of fun and long lasting memories!

## GIRLS ON THE RUN AT SAUCON VALLEY ELEMENTARY

**Days:** Mon/Wedn **Times:** 3:30pm-5:00pm
**Registration opens:** NOW!
**Who:** Girls 3rd and 4th grade
**First Practice:** Monday 9/19
**5k Date:** Saturday, 12/3 @ DeSales University
*More details to follow.
**Registration fees:** $160.
*Payment plans and scholarships available.
Information for financial assistance is provided when registering online.

Participants of all intersecting social identities, including all races, ethnicities, income levels, sexual orientations, religions and those with and without disabilities may register.

***Questions:*** *Please contact Jessica Younker Program Director jessica.younker@girlsontherun.org or 484-431-7564*

15 Spots will fill up fast!
First come first served

REGISTER
www.gotrlehighvalley.org

↑ SCAN ME

👍❤️ 8                                                3 comments

👍 Like          💬 Comment          ↪ Share

TST000009

 **Saucon Valley Elementary School**
September 6, 2022 · 🌐

Parents/Guardians of 3rd and 4th grade girls- be sure to check your child's backpack for information on our Girls on the Run program.

 4

 Like          💬 Comment           Share

TST000010

**Saucon Valley Elementary School**
March 5, 2021 · ⊚

Girls On The Run registration for the spring 2021 season is open! At this time, GOTR is open to 4th grade girls only because of limited space available. If the roster is not filled, we will expand registration to 3rd graders. Sign up soon to secure your spot! Girls On The Run is so much fun!!



## Girls on the Run is an afterschool program like no other!
Girls will have fun, make friends, increase their physical activity, and learn important life skills



This year's adapted program is safe and flexible for our community so that girls can connect with their peers. We are excited to have the flexibility to seamlessly transition between in-person and virtual programming if needed. Practices will follow all COVID-19 safety guidelines outlined by the school.

Our qualified and trained Coaches guide girls through research-based life skills curriculum. The curriculum contains lessons that are filled with physical and nonphysical activities that ALL girls can participate in!

Right now, girls need this more than ever!



### WHEN IS THE PROGRAM?
- Tuesdays/Thursdays 3:30pm-5:00pm. April 6th-June 3rd.
- Virtual students are eligible to participate in-person, but no virtual option is available unless the district mandates the building to move to full remote learning.
- Practices will be held twice per week (16 sessions total) for 90 minutes after school. June 3rd will be our celebratory 5k event. Stay tuned for more details!

### WHO CAN SIGN UP?
- GOTR is open to girls in 4th grade. If the roster of 12 does not fill with 4th grade girls, we will open spots for 3rd grade girls.

### HOW DOES A GIRL REGISTER?
- Online starting 3/1 @ www.gotrlehighvalley.org or you may scan the QR code below.



### What is the cost?
- sliding scale based on household income, $10-$155
  - Full and partial scholarships available

*We have never turned a girl away based on her inability to pay the registration fee.*

### Each Girl receives the following with her registration:
- Individual Cinch Sack to store all her program materials
- Curriculum Journal
- Program Shirt
- 5k Shirt
- Registration into our end of season celebration 5k
- Girls on the Run Face Mask

Questions? Please contact jessica.younker@girlsontherun.org or 484-431-7564.

3 comments

👍 Like          💬 Comment

TST000011



Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade.
For more information visit: www.gotrlehighvalley.org

**SAUCON VALLEY MIDDLE SCHOOL**
**Heart & Sole Program Dates: March 12 – May 30, 2019**
**Days: Tuesdays & Thursdays**
**Time: 2:30-4:00pm**
**5k: Thursday, May 30th, 6:00pm race start**

*Participants MUST be able to attend both days to be part of the program.*

**Heart & Sole at Saucon Valley is open to girls in 6th- 8th grade.**

**Register online 2/1-3/1 at: www.gotrlehighvalley.org**



    

This photo is from a post.

**Saucon Valley Middle School**
January 22, 2020

Like     Comment

Write a comment...

TST000012



## Saucon Valley Middle School
January 22, 2020 · ⚙

Calling all 6th-8th grade girls. The Girls on the Run Heart & Sole Program registration starts on 2/1/20 and runs through 3/1/20. See the attached flyer for more information!



Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade.
For more information visit: www.gotrlehighvalley.org

**SAUCON VALLEY MIDDLE SCHOOL**
Heart & Sole Program Dates: March 12 – May 30, 2019
Days: Tuesdays & Thursdays
Time: 2:30-4:00pm
5k: Thursday, May 30th, 6:00pm race start
*Participants MUST be able to attend both days to be part of the program.*

### Girls on the Run Sliding Fee Scale

**Thanks** to our generous sponsors and donors! Because of their support we are able to offer the program at a reduced rate of $155 per girl – well below the actual cost per girl. Individual donations and grants help to bridge the gap between actual cost and program fee.

- We continue our mission of making the program as accessible as possible by offering financial aid to families that are not able to afford the full $155 registration fee. Financial aid scholarships range from $30 to $145.

| Household Income | Program Fee | Scholarship Amount Given |
|---|---|---|
| $80,001 + | $155 | - |
| $50,001-$80,000 | $125 | $30 |
| $40,001-$50,000 | $100 | $55 |
| $30,001 – $40,000 | $75 | $80 |
| $20,001 – $30,000 | $25 | $130 |
| Under $20,000 | $10 | $145 |

- Girls on the Run believes a strong sense of pride and ownership is developed when recipients of financial aid contribute toward their involvement. Therefore, all scholarship recipients are asked to pay *at least a portion of the registration fee.*

- If your household income is such that you require financial assistance, your fee will automatically be adjusted during the online registration process. Questions? Contact Liz Fones, Program Manager, Girls on the Run Lehigh Valley, fonese@diakon.org or 610-533-1141.

👍 3                                    1 share

👍 Like          💬 Comment          ↗ Share



**Saucon Valley Middle School**
February 21, 2019 · ⚙

Last Call for Girls on the Run, registration closes on Friday, March 1st. See Flyer below.
Flyers also available in the Main Office



Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade.
For more information visit: www.gotrlehighvalley.org

**SAUCON VALLEY MIDDLE SCHOOL**
**Heart & Sole Program Dates: March 12 – May 30, 2019**
**Days: Tuesdays & Thursdays**
**Time: 2:30-4:00pm**
**5k: Thursday, May 30th, 6:00pm race start**

*Participants MUST be able to attend both days to be part of the program.*

**Heart & Sole at Saucon Valley is open to girls in 6th- 8th grade.**

**Register online 2/1-3/1 at: www.gotrlehighvalley.org**


🟢 brain  🔴 heart  🟠 social  🔵 body  🟣 spirit

    

1 share

 Like           Comment           Share

TST000014



## Saucon Valley Middle School
January 10, 2019 · ⚙

Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade. For more information visit: www.gotrlehighvalley.org



### Girls on the Run Sliding Fee Scale

**Thanks** to our generous sponsors and donors! Because of their support we are able to offer the program at a reduced rate of $155 per girl – well below the actual cost per girl. Individual donations and grants help to bridge the gap between actual cost and program fee.

○ We continue our mission of making the program as accessible as possible by offering financial aid to families that are not able to afford the full $155 registration fee. Financial aid scholarships range from $30 to $145.

| Household Income | Program Fee | Scholarship Amount Given |
|---|---|---|
| $80,001 + | $155 | - |
| $50,001-$80,000 | $125 | $30 |
| $40,001-$50,000 | $100 | $55 |
| $30,001 – $40,000 | $75 | $80 |
| $20,001 – $30,000 | $25 | $130 |
| Under $20,000 | $10 | $145 |

○ Girls on the Run believes a strong sense of pride and ownership is developed when recipients of financial aid contribute toward their involvement. Therefore, all scholarship recipients are asked to pay *at least a portion of the registration fee.*

○ If your household income is such that you require financial assistance, your fee will automatically be adjusted during the online registration process. Questions? Contact Liz Fones, Program Manager, Girls on the Run Lehigh Valley, fonese@diakon.org or 610-533-1141.

Heart & Sole was made for middle school girls like you! Heart & Sole meets twice a week after school for 10 weeks. We'll talk about things you want to talk about, run, laugh, dream, and lots more! Heart & Sole is a program from Girls on the Run International for girls in 6th-8th grade.
For more information visit: www.gotrlehighvalley.org

**SAUCON VALLEY MIDDLE SCHOOL**
**Heart & Sole Program Dates: March 12 – May 30, 2019**
**Days: Tuesdays & Thursdays**
**Time: 2:30-4:00pm**
**5k: Thursday, May 30th, 6:00pm race start**

*Participants MUST be able to attend both days to be part of the program.*

## Saucon Valley Middle School
Middle School

💬 **Send message**

👍 2





**Saucon Valley Elementary School**
October 6, 2022 · 🌐

This opportunity is open to both Elementary and Middle School students.



Saucon Valley Students and Parents are invited to
Meet Astronaut Terry Hart

⭐ ⭐ ⭐

* Mission Specialist on STS-41 C*
* Flew on the Space Shuttle Challenger in 1984 *
* Has logged a total of 168 hours in Space *

⭐ ⭐ ⭐

Place: Saucon Valley Middle School LGI
Date: October 27, 2022
Time: 6:00 pm—8:00 pm



Learn about Terry Hart's
experiences as an
Astronaut

 Hosted by Cub Pack 319 and Scout Troop 319

 36

4 shares

 Like

 Comment

TST000016

**Saucon Valley Elementary School**
October 26, 2022 · 🌐

Just a reminder about this great opportunity for students and parents to attend.



**Saucon Valley Students and Parents are invited to Meet Astronaut Terry Hart**

⭐ ⭐ ⭐

\* Mission Specialist on STS-41 C\*

\* Flew on the Space Shuttle Challenger in 1984 \*

\* Has logged a total of 168 hours in Space \*

⭐ ⭐ ⭐

Place: Saucon Valley Middle School LGI

Date: October 27, 2022

Time: 6:00 pm—8:00 pm



Learn about Terry Hart's experiences as an Astronaut

 **Hosted by Cub Pack 319 and Scout Troop 319**

  6

2 shares

👍 Like      💬 Comment       Share

TST000017

Please see the attached for a summer camp opportunity to be held at SVHS. 🐾

---

CRUM & FORSTER  THECURRNT.COM  NYINI LUXURY  SURRE GOLDBERG HENRY & ASSO

**Please email questions to: Joettaevents@yahoo.com**

*Joetta Sports & Beyond, LLC, CRUM & FORSTER,*
*Presents: A Speed/Agility Track & Field Camp*
*"Determined to Reach Your Destiny XIX"*
*July 6, 7, 8 & 9, 2021, Tuesday through Friday*
*Camp starts at 8:30am – 3:00pm*

Saucon Valley HS 2100 Polk Valley Road, Hellertown, PA 18055, Track/Football Stadiu
Emails accepted)

_____
th _____  Age _____
_____
_____  State _____  Zip ____
e _____  Email _____
_____
_____
Contact Name _____ Phone ____
edical Conditions_____

Waiver: I AM AN ADULT OVER 18 YEARS OF AGE AND WISH TO HAVE MY CHILD/CHILDREN PERMI
E IN THE TRACK & FIELD CAMP ACTIVITIES. I understand that even when every reasonable precaution is take
still happen. Therefore, in exchange for JOETTA SPORTS & BEYOND, LLC and all sponsors allowing me to par
erstand and expressly acknowledge that I release JOETTA SPORTS & BEYOND, all sponsors and its staff membe
injury, loss or damage connected in any way whatsoever to my (or my children's) participation in this event on or
con Valley High School in Hellertown, PA. My child does not have any injuries or medical conditions that mi
participate in activities. I understand that this release includes any medical, injury claims based on negligence, actio
& Beyond and its staff. I have read and am voluntarily signing the authorization and release.

_____  Date: _____

**Non-Refundable Camp Registration Fee**
Saucon Valley Residence $140.00
Non Residents: $160.00
*Early Bird Campers (Non Residents) $150.00 Deadline June 1, 2021
Make payments to Joetta Sports & Beyond, LLC
Mail payments to: JSB, LLC PO Box 6262, Hillsborough, NJ 08844

---

1988, 1992, 1996 & 2000 (
**"Joetta"**
&
**CRUM & FORST**
**Present: 20th Ann**

STER NOW!

D2.RYD

IINED TO REACH YOUR DESTINY SPEED, AGILITY AND TRA

**July 6,7,8,& 9 2021 | Tuesday thru Friday**
**8:30am – 3:00pm | Boys and Girls Ages 7 – 18**

**Saucon Valley High School**
2100 Polk Valley Road
Hellertown, Pa. 18055

**Non-Refundable Camp Registration Fee:**
Saucon Valley Residents: **$140.00**
Non Residents: **$160.00**
Bird Special (Non Residents) $150.00 | Deadline June 1

****Please bring a lunch! Lunch is NOT provided****
Application should be received by June 27, 2021





For applications visit: Joettasportsandbeyond.com
Joettaevents@yahoo.com (484) 851-3148



---

👍 Like          💬 Comment          ↗ Share  TST000018

![Saucon Valley Middle School panther logo]

**Saucon Valley Middle School**
June 14, 2021 · ⚙

Please see the following information for a speed and agility camp held here at Saucon Valley School District.



1988, 1992, 1996 & 2000 O
"Joetta"
&
CRUM & FORST
Present: 20th Ann

D2RYD

STER NOW!

…INED TO REACH YOUR DESTINY SPEED, AGILITY AND TRA

**July 6,7,8,& 9 2021 | Tuesday thru Friday**
8:30am – 3:00pm | Boys and Girls Ages 7 – 18

**Saucon Valley High School**
2100 Polk Valley Road
Hellertown, Pa. 18055

**Non-Refundable Camp Registration Fee:**
Saucon Valley Residents: $140.00
Non Residents: $160.00
Bird Special (Non Residents) $150.00 | Deadline June 1

**Please bring a lunch! Lunch is NOT provided**
Application should be received by June 27, 2021

Joetta Sports & Beyond | CF CRUM & FORSTER

For applications visit: Joettasportsandbeyond.com
Joettaevents@yahoo.com (484) 851-3148

---

CRUM & FORSTER | THECURRNT.com | NYINI LUXURY JEWELRY | SHH

Please email questions to: Joettaevents@yahoo.com

*Joetta Sports & Beyond, LLC, CRUM & FORSTER,*
*Presents:* A Speed/Agility Track & Field Camp
**"Determined to Reach Your Destiny XIX"**
*July 6, 7, 8 & 9, 2021, Tuesday through Friday*
Camp starts at 8:30am – 3:00pm

Saucon Valley HS 2100 Polk Valley Road, Hellertown, PA 18055, Track/Football Stadium
Emails accepted)

_____ Age _____

_____ State _____ Zip _____

_____ Email _____

_____

___ Contact Name _____ Phone _____

___ Medical Conditions_____

Waiver: I AM AN ADULT OVER 18 YEARS OF AGE AND WISH TO HAVE MY CHILD/CHILDREN PERMI…
… IN THE TRACK & FIELD CAMP ACTIVITIES. I understand that even when every reasonable precaution is tak…
… still happen. Therefore, in exchange for JOETTA SPORTS & BEYOND, LLC and all sponsors allowing me to par…
… erstand and expressly acknowledge that I release JOETTA SPORTS & BEYOND, all sponsors and its staff membe…
… injury, loss or damage contained in any way whatsoever to my (or my children's) participation in this event on or …
… ucon Valley High School in Hellertown, PA. My child does not have any injuries and or medical conditions that mig…
… participate in activities. I understand that this release includes any medical, injury claims based on negligence, actio…
… & Beyond and its staff. I have read and am voluntarily signing the authorization and release.

_____ Date: _____

**Non-Refundable Camp Registration Fee**
Saucon Valley Residence $140.00
Non Residents: $160.00
*Early Bird Campers (Non Residents) $150.00 Deadline June 1, 2021
Make payments to Joetta Sports & Beyond, LLC
Mail payments to: JSB, LLC PO Box 6262, Hillsborough, NJ 08844

2 shares

👍 Like          💬 Comment          ↪ Share

TST000019



1988, 1992, 1996 & 2000 Olympian
"Joetta"
&
CRUM & FORSTER
Present: 20th Annual

REGISTER NOW!

# D2RYD

DETERMINED TO REACH YOUR DESTINY SPEED, AGILITY AND TRACK CAMP

July 6,7,8,& 9 2021 | Tuesday thru Friday
8:30am – 3:00pm | Boys and Girls Ages 7 – 18

Saucon Valley High School
2100 Polk Valley Road
Hellertown, Pa. 18055

Non-Refundable Camp Registration Fee:
Saucon Valley Residents: $140.00
Non Residents: $160.00
*Early Bird Special (Non Residents) $150.00 | Deadline June 1, 2021

**Please bring a lunch! Lunch is NOT provided**
Application should be received by June 27, 2021

---

Saucon Valley Elementary School
June 14, 2021

👍 Like          💬 Comment

See more of Saucon Valley Elementary School on Facebook

Log In     or     Create new account

TST000020



**1988, 1992, 1996 & 2000 Olympian
"Joetta"
&
CRUM & FORSTER
Present: 20th Annual**

# D2RYD

**DETERMINED TO REACH YOUR DESTINY** SPEED, AGILITY AND TRACK CAMP

**July 6,7,8,& 9 2021 | Tuesday thru Friday
8:30am – 3:00pm | Boys and Girls Ages 7 – 18**

**Saucon Valley High School**
2100 Polk Valley Road
Hellertown, Pa. 18055

**Non-Refundable Camp Registration Fee:**
Saucon Valley Residents: **$140.00**
Non Residents: **$160.00**
*Early Bird Special (Non Residents) $150.00 | Deadline June 1, 2021

**\*\*Please bring a lunch! Lunch is NOT provided\*\***
Application should be received by June 27, 2021

 

For applications visit: Joettasportsandbeyond.com
Joettaevents@yahoo.com (484) 851-3148

TST000021

👍 1

👍 Like    💬 Comment

Write a comment...



**Saucon Valley Elementary School**
April 25, 2022 · 🌐



INTERESTED IN CHEERLEADING?

COME JOIN US FOR AN OPEN HOUSE EVENT ON
MAY 11TH FROM 6-8PM IN THE ELEM. CAFETERIA.

LEARN CHEERS
LEARN JUMPS
LEARN STUNTS

SAUCON VALLEY HIGH SCHOOL CHEERLEADERS WILL
BE IN ATTENDANCE TO HELP YOU LEARN MORE!

OPEN TO AGES 4YRS OLD THROUGH 5TH GRADE.

**NEED MORE INFORMATION?**
**CONTACT: ALICIA AT 267-221-0448**
**SAUCON VALLEY YOUTH SPORTS ASSOCIATION**



 4

2 comments

 Like      💬 Comment      ➤ Share

TST000022

facebook

Email or phone | Password | **Log In** | Forgot Account?



**Saucon Valley Elementary School**
September 28, 2022 · 🌐

Saucon Valley Youth Basketball has opened registration for the 2022-2023 season! Teams will be forming for girls and boys in grades 1-8. For more information or to sign up, go to www.svyb.org. Please register by October 15th. Any questions can be directed to mikesvyb@gmail.com

👍❤️ 9                                    2 💬

👍 Like            💬 Comment

Most relevant ▾

 **Saucon Valley Youth Basketball**
There's only one week left to register for basketball. Get those teamsnap registrations filled out! Check out www.svyb.org for more information and the registration link. Keep sending those questions to mikesvyb@gmail.com.



TST000023

**Saucon Valley Elementary School**
October 10, 2022 · 🌐

If you've been meaning to register your child for the youth basketball season, please do so by October 15th! SVYB runs a coed developmental league for 1st and 2nd graders ($80) and offers rec and travel options for boys and girls in grades 3-8 ($110). More info and the registration link can be found on www.svyb.org

 



Register NOW for the winter basketball season!

only

5

days left

👍 3

TST000024

👍 Like          💬 Comment          ↪ Share

**Saucon Valley Elementary School**
September 28, 2022 · 🌐

Saucon Valley Youth Basketball has opened registration for the 2022-2023 season! Teams will be forming for girls and boys in grades 1-8. For more information or to sign up, go to www.svyb.org. Please register by October 15th. Any questions can be directed to mikesvyb@gmail.com



TST000025

👍❤️ 9                                                    2 comments

 Like          💬 Comment           Share



**Saucon Valley Elementary School**
October 8, 2021 · 🌐

Students in grades 1 through 4 will be bringing home the flyer below with information on signing up for the SV Youth Basketball league.



# SAUCON VALLEY
# YOUTH BASKETBALL



### REGISTRATION IS NOW OPEN!
**2021-2022 WINTER SEASON**
**BOYS & GIRLS (Grades 1–6)**

**REGISTER ONLINE!**

Register at www.svyb.org

Our online registration is open now through October 12, 2021*.

Information about teams, costs, leagues, updates and news can be found on our website, as well as a new Frequently Asked Questions (FAQ) page on www.svyb.org.

All registration payments will be completed ONLINE during the registration process.

Registration for 7th and 8th grade boys will open mid to late November…Keep checking our website for details.

*Due to deadlines for entering local leagues, **all registrations must be received by October 12.** Registrations received after this date are subject to a $20 late fee.

*2021-2022 SVYB Programs include opportunities for ALL skill levels!*

- **Recreational Teams**
- **Competitive Travel Teams**
- **Skills & Drills**

- **Open Gym Time**
- **Tournaments**
- **Clinics**

Follow us on Facebook!      www.facebook.com/SauconValleyYouthBasketball      👍Like

**Questions and Contact:** mikesvyb@gmail.com

👍 5                                                                                              1 share

 Like           Comment           Share



## Saucon Valley Elementary School
October 8, 2021 · 🌐

Students in grades 1 through 4 will be bringing home the flyer below with information on signing up for the SV Youth Basketball league.



# SAUCON VALLEY YOUTH BASKETBALL



## REGISTRATION IS NOW OPEN!
### 2021-2022 WINTER SEASON
### BOYS & GIRLS (Grades 1–6)

**REGISTER ONLINE!**

Register at www.svyb.org

Our online registration is open now through October 12, 2021*.

Information about teams, costs, leagues, updates and news can be found on our website, as well as a new Frequently Asked Questions (FAQ) page on www.svyb.org.

All registration payments will be completed ONLINE during the registration process.

Registration for 7th and 8th grade boys will open mid to late November...Keep checking our website for details.

*Due to deadlines for entering local leagues, all registrations must be received by October 12. Registrations received after this date are subject to a $20 late fee.*

**2021-2022 SVYB Programs include opportunities for ALL skill levels!**

- Recreational Teams
- Competitive Travel Teams
- Skills & Drills

- Open Gym Time
- Tournaments
- Clinics

Follow us on Facebook!    www.facebook.com/SauconValleyYouthBasketball    👍Like

Questions and Contact: mikesvyb@gmail.com

 5

1 share

👍 Like          💬 Comment          ↗ Share



# Lehigh Valley Gem, Mineral & Jewelry Show

Join the Saucon Valley Lions Club for their 50th Annual Gem, Mineral & Jewelry Show!

## Date & Time

📅 April 19, 2020
🕐 10:00AM - 5:00PM

## Location



📍 **Saucon Valley High School** - 2100 Polk Valley Rd, Hellertown, PA, 18055

Get Directions

## More Info

🔗 Event Website
💵 **Adults $8, Seniors & Children $7.50**



Come out and support the Saucon Valley Lion's Club for their 50th annual Gem, Mineral and Jewelry Show. Over 20 vendors will be joining us this year. Show dates and times are: Saturday April 18th 10-6 pm and Sunday April 19th 10-5. Like every year, we will be having a bake sale and food, and hourly door prizes. The show is located in the gymnasium of the Saucon Valley High School. Coupons will be available as the date gets closer for 50 cents off admission by going to www.sauconvalleylions.org. Cost to get in the show is $8.00 for adults, $7.50 for seniors and students. Children 3 and under are free. All proceeds benefit local charities and families in need, Saucon Valley School District scholarships, local schools sports teams, The Center for Vision Loss and the Blind Foundation. Over 25 vendors!

Submit an Event    List Your Business    Login/Join





**7**

APR 7, 2018 AT 10 AM – APR 8, 2018 AT 5 PM

Lehigh Valley Gem, Mineral & Jewelry Show

Saucon Valley High School

**About**    Discussion    ···

### Details

👥 525 people responded

👤 Event by **Amy Campbell-Musser** and **Josh Popichak**

📍 Saucon Valley High School

🕐 Duration: 2 days

🌐 Public · Anyone on or off Facebook

Please join us for Saucon Valley Lion's Club's 48th annual Gem, Mineral & Jewelry Show!

Again this year we will be having 20+ vendors, our fabulous massage therapist West from Saucon Valley Massage Therapy, great food, door prizes, outdoor gem panning and more! Bring your jewelry to be repaired, polished or sized by our amazing gemologist and bench jeweler Henry from Henry's Gems.

There's always something for most ages to find such as; fossils, jewelry, gemstones, crystals, jewelry settings, beads, rocks, handmade jewelry, and much much more. Each of our vendors donate a door prize which will be raffled off every half hour.

Admission fee for adults is $7.50. It is $6.50 for seniors, and six dollars for students. Children under three are free. A coupon will be available closer to the event date. Check back for updates.

All of our proceeds go to the Foundation for the Blind and local charities and families in need. They also help benefit the Saucon Valley High School scholarships. This is our biggest fundraiser of each year. I hope you can join us! Pictures, vendor list, and a coupon will be posted as we near the event. Please spread the news! **See less**

Lower Saucon



**Saucon Valley High School**
Hellertown, PA

Saucon Valley High School is a four-year public high school in Lower Saucon Township, Pennsylvania, in the United States… **See more**

### Guests    See All

**130**
Went

**395**
INTERESTED

### Share to Groups    See all

TST000029

# Details

👥 525 people responded

👤 Event by **Amy Campbell-Musser** and **Josh Popichak**

📍 **Saucon Valley High School**

⏱ Duration: 2 days

🌐 Public · Anyone on or off Facebook

Please join us for Saucon Valley Lion's Club's 48th annual Gem, Mineral & Jewelry Show!

Again this year we will be having 20+ vendors, our fabulous massage therapist West from Saucon Valley Massage Therapy, great food, door prizes, outdoor gem panning and more! Bring your jewelry to be repaired, polished or sized by our amazing gemologist and bench jeweler Henry from Henry's Gems.

There's always something for most ages to find such as; fossils, jewelry, gemstones, crystals, jewelry settings, beads, rocks, handmade jewelry, and much much more. Each of our vendors donate a door prize which will be raffled off every half hour.

Admission fee for adults is $7.50. It is $6.50 for seniors, and six dollars for students. Children under three are free. A coupon will be available closer to the event date. Check back for updates.

All of our proceeds go to the Foundation for the Blind and local charities and families in need. They also help benefit the Saucon Valley High School scholarships. This is our biggest fundraiser of each year. I hope you can join us! Pictures, vendor list, and a coupon will be posted as we near the event. Please spread the news! **See less**

Lower Saucon

TST000030





**APR 7, 2018 AT 10 AM – APR 8, 2018 AT 5 PM**

## Lehigh Valley Gem, Mineral & Jewelry Show

Saucon Valley High School

**About**    Discussion    ...

### Details

- 525 people responded
- Event by **Amy Campbell-Musser** and **Josh Popichak**
- **Saucon Valley High School**
- Duration: 2 days
- Public · Anyone on or off Facebook

Please join us for Saucon Valley Lion's Club's 48th annual Gem, Mineral & Jewelry Show!
Again this year we will be having 20+ vendors, our fabulous massage therapist West from Saucon Valley Massage Therapy, great food, door prizes, outdoor gem panning and more!
Bring your jewelry to be repaired, polished or sized by our amazing gemologist and bench



TST000031

## Details

👥 2.4K people responded

👤 Event by **Saucon Valley Lions** and **Josh Popichak**

📍 **Saucon Valley Shs**

🕐 Duration: 2 days

🌐 Public · Anyone on or off Facebook

Come out and support the Saucon Valley Lion's Club for their 47th annual Gem, Mineral and Jewelry Show. Over 20 vendors will be joining us this year. Show dates and times are: Saturday April 8th 10-6pm and Sunday April 9th 10-5. Like every year, we will be having a bake sale and food, and hourly door prizes. The show is located in the gymnasium of the Saucon Valley High School.

Coupons can be found for 50 cents off admission by going to www.sauconvalleylions.org. Cost to get in the show is $7.50 for adults, $6.50 for seniors, and $6 for students. Children 3 and under are free.

All proceeds benefit local charites and families in need, Saucon Valley School District scholarships, and the Blind Foundation. A list of vendors will be updated here.

Don't forget about our annual blood drive which is held in the high school cafeteria: 10am-2:30pm
Free admission to the show for donors
Sign ups are done online
Photo ID required

For any questions please contact Amy Musser, Gem Show Chairwoman: angelblessings999@gmail.com Thank you! **See less**

Lower Saucon



**Saucon Valley Shs**
2100 Polk Valley Rd, Hellertown, PA



## Guests                    See All

**484**          **1.9K**
Went          INTERESTED

Message Friends

TST000032

**PRESENT THIS CARD FOR 50 CENTS OFF ADMISSION**

# Lehigh Valley

## 49TH ANNUAL
## GEM, MINERAL & JEWELRY SHOW
### Presented by Saucon Valley Lions Club

## APRIL 13 - 14, 2019

Saturday 10 am - 6 pm    Sunday 10 am - 5 pm
Saucon Valley Senior High School
2100 Polk Valley Road, Hellertown, PA

**FREE ADMISSION SATURDAY FOR BLOOD DONORS**
**JEWELRY & GEM STONES**
**JEWELRY MAKING**
**JEWELRY REPAIR**
**LAPIDARY SUPPLIES**
**MINERALS • FOSSILS**



www.sauconvalleylions.org

*DOOR PRIZES and REFRESHMENTS*

Admission: $8 for Adults - $7.50 for Seniors & Students

DURING THE SHOW, WE WILL BE ACCEPTING NON-PERISHABLE FOOD ITEMS. ALL DONATIONS WILL BE DONATED TO THE LOCAL FOOD BANKS WHO SERVICE MANY FAMILIES IN NEED IN OUR COMMUNITY.

TST000033



and Child Evangelism Fellowship

**GOOD NEWS CLUB®**

Join us for a time of singing, games and Bible lessons!
Thursdays, from February 23 to March 30
at Saucon Valley Middle School Large Group Instruction Room



**Saucon Community Church**
February 22 at 10:34 AM · 🌐

Now, more than ever, children need the Gospel. That's why Saucon Community Church is sponsoring the Child Evangelism Fellowship Good News Club at the Saucon Valley School District.

Every Thursday, beginning February 23 through March 30, the Good News Club will be meeting for games, songs, and Bible lessons! Open to students from 2nd to 4th grade!

If you wish to enroll your child, please visit www.sauconbfc.org to download the registration form or email us at info@sauconbfc.org.

👍❤️😆 5                    3 comments  2 shares

 Like         Comment    TST000034



**Saucon Community Church**
February 21 at 3:55 PM · 🌐

Now, more than ever, children need the Gospel. That's why Saucon Community Church is sponsoring the Child Evangelism Fellowship Good News Club at the Saucon Valley School District.

Every Thursday, beginning February 23 through March 30, the Good News Club will be meeting for games, songs, and Bible lessons. Open to students from 2nd to 4th grade!

If you wish to enroll your child, please visit www.sauconbfc.org to download the registration form or email us at info@sauconbfc.org.

🔵❤️ 10                          14 shares

👍 Like          💬 Comment          ↪ Share



the Child Evangelism Fellowship

**GOOD NEWS CLUB**®

Join us for a time of singing, games and Bible lessons!
Thursdays, from February 23 to March 30
at Saucon Valley Middle School Large Group

TST000035

HELLERTOWN, PENNSYLVANIA Spread the word!



Sponsored by Saucon Community Church and Child Evangelism Fellowship

**GOOD NEWS CLUB**

Join us for a time of singing, games and Bible lessons!

thursdays, from February 23 to March 30 at Saucon Valley Middle School Large Group Instruction Room

To register, visit www.sauconbfc.org or email info@sauconbfc.org



 **Saucon Community Church**
5d · 🌐

Now, more than ever, children need the Gospel. That's why Saucon Community Church is sponsoring the Child Evangelism Fellowship Good News Club at the Saucon Val... **See more**

👍❤️ 2                                                    2 shares

 👍 Like          💬 Comment          ➤ Share

TST000036